IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,714

RAYMOND FULLER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

There are three categories of ineffective assistance of counsel claims. The first involves an allegation that a criminal defense attorney's performance was so deficient that the defendant was denied a fair trial. The second category applies when the assistance of counsel was denied entirely or denied at a critical stage of the proceeding. The third category includes situations in which the attorney actively represented conflicting interests. Claims in the first category follow the general rule and require a defendant to show constitutionally deficient performance by his or her attorney under the totality of the circumstances and prejudice. A court presumes prejudice for claims in the second category. For claims in the third category, the type of alleged conflict of interest dictates what a defendant must show in addition to the existence of the conflict itself. In the first subcategory of such claims, which involve multiple concurrent representations of codefendants with antagonistic interests, reversal is automatic. In the second subcategory, also involving certain instances of concurrent representation, it is sufficient if a defendant shows an adverse effect on the adequacy of counsel's performance. In the third subcategory, involving a conflict between the defendant and a former client or between

1

the defendant and the attorney, no standard of prejudice or adverse effect has previously been established by the United States Supreme Court.

2.

In this case, defense counsel's cross-examination-style questions of his client during the client's direct testimony at trial, when considered in context, were the product of a considered trial strategy and not an example of constitutionally deficient performance.

3.

In this case, defense counsel's cross-examination-style questions of his client during the client's direct testimony at trial, when considered in context, did not transform defense counsel into a second prosecutor, wholly depriving defendant of representation at a critical stage of the proceedings.

4.

The Kansas appellate courts construe K.S.A. 60-2103(b) to assure justice in every proceeding, but there is a substantive minimum below which a notice of appeal cannot fall and still support jurisdiction. Under the circumstances of this case, the Court of Appeals had and the Supreme Court has appellate jurisdiction to consider a district court ruling referenced in a later written order explicitly challenged in the defendant's notice of appeal.

5.

In this case, defense counsel's failure to call a witness to impugn the character of the victim of the alleged sex crimes was not an example of constitutionally deficient performance. The testimony would have been irrelevant and inadmissible.

6.

Under the unusual circumstances of this case—where a conflict of interest between the defendant and his criminal defense counsel clearly developed in the course of a hearing on the defendant's pro se motion for new trial and the district judge failed to react to it by appointing conflict-free counsel to assist the defendant—we must remand certain issues for rehearing with conflict-free counsel. The issues are limited to those in the defendant's pro se motion and those he raised by what was effectively an oral amendment at the hearing that have not already been disposed of adversely to him in subsequent proceedings under K.S.A. 60-1507.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 22, 2013. Appeal from Sedgwick District Court; ANTHONY J. POWELL, judge. Opinion filed December 23, 2015. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

*Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, argued the cause, and *Michael P. Whalen*, of the same office, was with her on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.:  Defendant Raymond Fuller challenges the Court of Appeals' decision affirming the district court judge's denial of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel. Fuller argues that he was blindsided by his lawyer's aggressive questioning of him during his trial for rape, aggravated sexual battery, and aggravated burglary. He also challenges his lawyer's failure to call a witness who would

have testified about the victim's flirtatious nature, and he asserts his lawyer had a conflict of interest at a hearing on a motion for new trial.

We recognize the conflict that existed between Fuller and his lawyer at the hearing on the motion for new trial and we fashion an appropriate remedy. We reject Fuller's other appellate arguments.

FACTUAL AND PROCEDURAL BACKGROUND

The charges against Fuller were based on allegations made by his next-door neighbor, C.K., after an encounter in C.K.'s home. Fuller admitted to sexual contact with C.K., but he defended on the basis that the contact was consensual.

The Court of Appeals panel summarized the conflicting trial testimony as follows:

"Fuller and the victim, C.K., were neighbors who had sporadic contact prior to the incident which resulted in charges against Fuller. . . . [T]he day prior to the incident, C.K. helped Fuller jump-start his vehicle. . . .

. . . .

"C.K. testified that at the time Fuller rang her doorbell, she was in her bathrobe and talking on the phone with her friend Brenon Odle. Her two children, ages 3 years and 22 months, were at home with her. C.K. told Odle to call her back in a few minutes and then stuck her head outside the door and told Fuller to 'give [her] a minute.' C.K. went to her bedroom to put some clothes on. Without C.K.'s permission, Fuller entered the house and walked into her bedroom doorway and told C.K., 'I like what I'm looking at.' Startled and caught off-guard, C.K. asked Fuller to give her 'just a minute' and directed him to wait in the living room. Fuller complied.

4

"C.K. finished dressing and went to the living room, where she seated herself f[a]rthest from Fuller on the couch. C.K.'s children were also with them in the living room. Fuller told C.K. that he had some photographs on his cell phone that he wanted to show her. C.K. leaned across the couch and saw that the photographs were of Fuller's penis. As she leaned over, Fuller grabbed C.K.'s hair and pulled her head toward[] his lap. He then pulled C.K.'s shirt down, exposing her chest, and grabbed her breast. After removing his hand from her chest, Fuller put his hand inside C.K.'s shorts and placed his fingers inside her vagina.

"The encounter ended when the phone rang and C.K. answered it. Although it was Odle calling her back, C.K. told Fuller that her husband was on the phone, and that her husband knew Fuller was there and Fuller should 'get the hell out of here.' Fuller left, but only after telling C.K. that he would kill her if she told anyone what happened. C.K. then told Odle what had happened.

. . . .

"Fuller testified that after he rang the doorbell, C.K. smiled and invited him in, and the two made 'small talk' as they walked to C.K.'s bedroom. Once in the bedroom, C.K. dropped her bathrobe and exposed herself to Fuller. Fuller retreated to the couch because the presence of C.K.'s children in the bedroom made him feel 'weird.' C.K. joined him on the couch and[,] after they talked briefly, C.K. exposed her vagina to him. Fuller admitted he placed his finger in C.K.'s vagina, but testified that C.K. smiled after he did so. Fuller then began performing oral sex on C.K. but stopped because the children were nearby. C.K. told Fuller she liked having her hair pulled, so Fuller playfully pulled her hair. Fuller agreed that the encounter ended when C.K.'s phone rang." *State v. Fuller*, No. 100,026, 2009 WL 4639506, at *1-2 (Kan. App. 2009) (unpublished opinion).

After Fuller's jury convicted him as charged, his lawyer, Quentin Pittman, filed a motion for new trial and a motion for judgment of acquittal, both attacking the sufficiency of the evidence. Fuller also filed a pro se motion, which the district judge construed as a motion for new trial, in which Fuller raised issues related to members of

5

his jury. At the hearing on the motions, Pittman described the trial as "extremely clean." The district judge ruled that sufficient evidence supported the convictions and denied the two motions Pittman had filed.

The district judge then turned to Fuller's motion. Pittman suggested that Fuller should argue his motion because "we kind of get into a mine field." Fuller's oral statement included issues beyond those in his written motion. He argued that his jury was not impartial, that the State had violated an order in limine, and that Pittman had failed to put on evidence in Fuller's defense. When the judge asked Pittman if he had anything to add to Fuller's argument, Pittman said that he had "a slightly different take on those issues." Pittman then defended his decisions about the evidence to put on at trial as strategic calls properly within the province of defense counsel. Pittman also defended his juror selections as strategic decisions and said he thought Fuller might "be mistaken in his recollection of several things."

Characterizing Fuller's arguments as allegations of ineffective assistance of counsel, the district judge concluded that—"for the reasons expressed by Mr. Pittman"—the challenged decisions qualified as trial strategy and did not support a finding of ineffective assistance of counsel.

On direct appeal before the Court of Appeals, Fuller asserted that "his trial counsel was so grossly ineffective that he entirely failed to subject the prosecution's case to meaningful adversarial testing," *Fuller*, 2009 WL 4639506 at *1, supporting this assertion with specific arguments different from those he raised before the district court. In particular, Fuller attacked Pittman's tone during Fuller's direct examination at trial and Pittman's failure to advocate for Fuller at his motion for new trial hearing. 2009 WL 4639506, at *5. A panel of the Court of Appeals declined to address the allegations because the record on appeal was not sufficiently developed, but it noted that "some of

6

Fuller's allegations, viewed from a cold record, are troubling." 2009 WL 4639506, at *5. The panel said that Fuller could challenge Pittman's effectiveness through a later motion under K.S.A. 60-1507.

As contemplated by the panel, Fuller filed a K.S.A. 60-1507 motion. In it he argued that Pittman had been ineffective: (1) by the way he conducted his direct examination of Fuller, (2) by failing to object to a jury instruction, (3) by failing to request a lesser included offense instruction, (4) by failing to argue in support of Pittman's motion for new trial, (5) by arguing against Fuller's pro se motion for new trial, (6) by failing to object to the prosecutor's cross-examination of Fuller, (7) by failing to strike two jurors, (8) by failing to discredit C.K., and (9) by failing to subpoena a witness who could have testified about C.K.'s flirtatious nature.

The district judge held a preliminary, nonevidentiary hearing on the motion. At the hearing, counsel for Fuller argued the motion and requested a full evidentiary hearing on the issues raised. The district judge denied relief on all but three of Fuller's allegations. The district judge ordered an evidentiary hearing on the claims that (1) Pittman was ineffective in his direct examination; (2) Pittman was ineffective in his advocacy at the motion for new trial hearing; and (3) Pittman was ineffective for failing to challenge two jurors.

At the evidentiary hearing, counsel for Fuller questioned Pittman about his use of cross-examination-style questions during Fuller's direct examination. Fuller had argued in his motion and had testified at the 1507 hearing that Pittman's "unorthodox" questions left Fuller confused, insinuated that he was guilty, destroyed his credibility, and were contrary to Fuller's theory of defense, *i.e.*, that the sexual contact was consensual. Pittman testified that he had provided Fuller with a list of questions to review before Fuller testified and that the style of the questions was not reflected on the list. Pittman also

7

conceded that he had not specifically prepared Fuller for the tone of the questions asked. When counsel for Fuller read questions from the trial transcript, Pittman agreed that he had asked the questions that were read.

Those questions included: "You are going over because you were going to have sex with her one way or the other, correct?"; "That's when you grab her?"; "That's when you say I want to fuck you?"; "Then you attack her?"; "That's when you grab her and attack her, right?"; "That's when you attack her?"; "That's when you jammed your finger into her vagina?"; "That's when you rip her shorts off?"; "[Y]ou then attack her, pull her hair and put your finger in her vaginal area, right?"; "You grab her by the back of the head and stick it towards your crotch?"; "That's when you said you tell anyone and I will fucking kill you?"; "Because you didn't tell the exact same story throughout that you eventually got to, you are a liar right?"; "I mean you raped her[?]" Pittman concluded his redirect examination with "And that's because you are a liar and rapist?"

Pittman testified that he asked these questions in order to "take away the sting of the accusation." He also said that he believed it was important for Fuller to appear credible, and, in an effort to achieve that aim, Pittman wanted Fuller to come across as "indignant, emotional." This reaction would have contrasted, Pittman said, with the appearance of C.K's testimony, which Pittman described as "blasé and not emotional." Pittman further testified that he wanted to "get out in front of the issue and do it in a controlled manner." Had Fuller not handled the questioning as Pittman intended, Pittman explained, he would have stopped using the tactic. Pittman also testified that, in his view, Fuller had done well on the stand and had connected with the jury.

Turning to Pittman's performance at the motion for new trial hearing, Pittman described the hearing as "contentious," but he did not specifically remember arguing Fuller's pro se motion.

8

Fuller's third claim subject to the district court evidentiary hearing—that Pittman was ineffective for failing to strike two jurors—was not appealed and does not warrant our discussion.

In an order dated May 17, 2012, and filed June 8, 2012, the district judge denied Fuller relief. The district judge concluded that Pittman's performance was reasonable and that the decision to use cross-examination-style questions was strategic. The district judge noted that "the technique worked (as demonstrated by trial counsel's continued use of it and [Fuller's] ability to answer the questions)." According to the district judge, the questioning softened the impact of the prosecutor's cross-examination and elicited "passionate denials" from Fuller.

As for Pittman's performance at the motion for new trial hearing, the district judge recognized Pittman's candor and ruled that his performance was reasonable. The district judge explained that Pittman had "truthfully explained what had occurred and why he did what he did." The district judge also concluded that Fuller was unable to show prejudice because there was no factual or legal merit to the issues he raised. The district judge did not discuss any alleged conflict of interest.

Fuller filed a notice of appeal from "the judgment entered May 17, 2012, and filed with the Court on June 08, 2012, denying his [motion] for relief under K.S.A. 60-1507." In his brief to the Court of Appeals, he identified three appellate challenges: (1) Pittman was ineffective on direct examination; (2) Fuller was denied conflict-free representation at his motion for new trial hearing; and (3) Pittman was ineffective for failing to call a witness who would have testified about the victim "being a flirt and a tease."

9

A panel of our Court of Appeals affirmed. The panel agreed with the district judge's characterization of Pittman's style of questioning on direct examination as a reasonable strategy, given Fuller's consent defense.

"Fuller's decision to take the stand and paint a picture of consensual sexual activity would have clearly opened him up to the same questioning by the prosecutor on cross-examination. We do not find it unreasonable strategy to try and soften the effect of Fuller's testimony while in the control of his own attorney, who testified he would have immediately stopped if he felt the aggressive questioning was not working and caused Fuller to become upset or flustered. The prosecutor would not have stopped." *Fuller v. State*, No. 108,714, 2013 WL 6164528, at *6 (Kan. App. 2013) (unpublished opinion).

On the issue of conflict-free counsel, the panel held that Pittman never gave up his role as Fuller's advocate at the motion for new trial hearing. The panel also ultimately concluded that Fuller was unable to show prejudice, notwithstanding its recognition that, as Fuller's trial counsel, "Pittman was obligated to advocate and prove his own professional ineffectiveness by addressing the claims for a new trial." 2013 WL 6164528, at *8.

Finally, the panel held that Fuller's claim of ineffectiveness based on Pittman's failure to call a witness to discredit C.K. was not properly before the court. The district judge had decided the issue against Fuller in the order dealing with the issues for which there was no evidentiary hearing, and Fuller's notice of appeal did not identify that order. In the alternative, assuming appellate jurisdiction to be sufficient, the panel concluded that Pittman's decision not to call the witness "was clearly a tactical decision and even if erroneous would not have changed the outcome of the trial." 2013 WL 6164528, at *13.

Fuller petitioned this court for review, raising the same three claims of ineffective assistance of counsel that he raised before the Court of Appeals.

10

"Ineffective assistance of counsel claims—whether based on deficient performance or conflict of interest—involve mixed questions of fact and law." *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013). When such claims are brought under K.S.A. 60-1507 and the district court conducts a full evidentiary hearing on them, we review the district court's factual findings for substantial competent evidence and we determine whether the factual findings support the district court's conclusions of law. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). We apply a de novo standard to the conclusions of law. 297 Kan. at 669. For ineffective assistance of counsel claims on which there is no evidentiary hearing in the district court, we review de novo the district court's determination that relief should be denied on the motion, files, and records of the case. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The burden of proof in establishing ineffective assistance of counsel is on the K.S.A. 60-1507 movant. *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994).

Ineffective assistance of counsel claims inhabit three categories we recently summarized in *Sola-Morales*, 300 Kan. at 882-84. We begin our analysis of this case with that summary:

> "The Sixth Amendment to the United States Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.' This right to counsel is applicable to state proceedings under the Fourteenth Amendment. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). This guarantee includes the right to more than the mere presence of counsel[. It] also [includes] the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267, 104 S. Ct. 3562, 82 L.

11

Ed. 2d 864 (1984); see also *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). We have acknowledged that '[t]he purpose of the effective assistance guarantee "is simply to ensure that criminal defendants receive a fair trial."' *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012) (quoting *Strickland*, 466 U.S. at 689).

"We have interpreted United States Supreme Court caselaw as distinguishing among three categories of ineffective assistance of counsel claims:

"'The first category includes cases in which it is claimed that the attorney's performance was so deficient that the defendant was denied a fair trial. The second category applies when the assistance of counsel was denied entirely or denied at a critical stage of the proceeding. The third category includes situations where the defendant's attorney "actively represented conflicting interests."' *Galaviz*, 296 Kan. at 181 (quoting *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074, 122 S. Ct. 1954, 152 L. Ed. 2d 856 [2002]).

"Claims of ineffective assistance of counsel for deficient performance under the first category are the 'general rule' and controlled by *Strickland. Galaviz*, 296 Kan. at 181 (citing *Mickens*, 535 U.S. at 166). To prevail on such a claim, a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *State v. Bledsoe*, 283 Kan. 81, 90, 150 P.3d 868 (2007); see *Strickland*, 466 U.S. at 687.

"The second category of claims falls under an exception to the general rule known as the *Cronic* exception. It applies only when a defendant is completely denied the assistance of counsel or denied counsel 'at a critical stage of a proceeding.' *Galaviz*, 296 Kan. at 181 (citing *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 [1984]). Under these circumstances, a court may presume the defendant was prejudiced, *i.e.*, he or she is 'spared . . . the need of showing probable effect upon the

12

outcome.' 296 Kan. at 181 (quoting *Mickens*, 535 U.S. at 166); see *State v. Stovall*, 298 Kan. 362, 375, 312 P.3d 1271 (2013). . . .

"The third category of claims involves attorney conflicts of interest. The right to counsel extends a duty of loyalty from counsel to the client so '[a] defendant in a criminal trial must have "'representation that is free from conflicts of interest.'" [Citations omitted.]' *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). To prevail on such a claim, the defendant must first establish his or her attorney "'actively represented conflicting interests.'" *Galaviz*, 296 Kan. at 181 (quoting *Mickens*, 535 U.S. at 166). Beyond this starting point, the type of alleged conflict dictates what the defendant must additionally establish to prevail. The United States Supreme Court has recognized three subcategories of conflict of interest claims: (1) the automatic reversal exception, (2) the adverse effect exception, and (3) what we have labeled the '*Mickens* reservation.' See 296 Kan. at 181-85 (discussing the three *Mickens* subcategories).

"The first subcategory of conflict of interest claims, *i.e.*, the automatic reversal exception, is relevant only in cases of 'multiple concurrent representation,' which is when defense counsel 'is simultaneously representing codefendants with antagonistic interests in the same proceeding.' *Stovall*, 298 Kan. at 376 (citing *Galaviz*, 296 Kan. at 183). This exception additionally requires an objection to the representations before or during the proceedings and also a failure of the district court to inquire and determine there is no conflict. *Galaviz*, 296 Kan. at 183. Under this exception, as with the *Cronic* exception, reversal is automatic—unless the district court determines there is no conflict of interest. 296 Kan. at 183; see *State v. Gleason*, 277 Kan. 624, 650, 88 P.3d 218 (2004).

"While the second subcategory, *i.e.*, the adverse effect exception, also requires an attorney conflict of interest through concurrent representation of codefendants, it is dissimilar from the automatic reversal exception because it arises when no objection to the conflict is lodged before or during the proceedings. *Stovall*, 298 Kan. at 376 (citing *Galaviz*, 296 Kan. at 183). And under this particular exception, '"a defendant must demonstrate that 'a conflict of interest *actually affected* the adequacy of his representation.'"' (Emphasis added.) *Galaviz*, 296 Kan. at 183 (citing *Mickens*, 535 U.S. at 168); see *Gleason*, 277 Kan. at 650. This standard is lower than *Strickland*'s, which

13

imposes a burden on defendant to show actual prejudice by the attorney's performance, *i.e.*, 'probable effect upon the outcome of the trial.' 296 Kan. at 184 (citing *Mickens*, 535 U.S. at 174).

"The third subcategory, *i.e.*, the *Mickens* reservation, is relevant where a conflict is '"rooted in counsel's obligations to former clients"' or '"counsel's personal or financial interests."' *Galaviz*, 296 Kan. at 184 (quoting *Mickens*, 535 U.S. at 174). We have referred to this subcategory as the *Mickens* reservation because the Supreme Court did not articulate what additional burden, *e.g.*, prejudice or adverse effect, a defendant must satisfy before receiving relief based on such conflicts of interest. *Mickens*, 535 U.S. at 176; *Galaviz*, 296 Kan. at 184-86; see *State v. Cheatham*, 296 Kan. 417, 449-50, 292 P.3d 318 (2013)." *Sola-Morales*, 300 Kan. at 882-84.

We have taken the liberty of reordering Fuller's three claims to enhance clarity of this opinion.

*Defense Counsel's Direct Examination of Fuller*

Fuller argues that Pittman's cross-examination-style questions on direct examination constituted ineffective assistance of counsel under two theories. First, Fuller argues that Pittman's performance on direct examination was deficient, *i.e.*, he advances an argument under the first category of ineffective assistance of counsel. Second, Fuller alleges that Pittman created a conflict of interest during direct examination. Fuller relies on *Cronic*, *i.e.*, the second category of ineffective assistance, but he also argues prejudice and speaks in terms of the third subcategory of the third category, *i.e.*, the *Mickens* reservation.

The district court denied relief on this claim after conducting an evidentiary hearing. Accordingly, we review the district court's factual findings for substantial competent evidence and determine whether the findings support its conclusions of law.

14

*Adams*, 297 Kan. at 665, 669. We apply a de novo standard to the conclusions of law. 297 Kan. at 669.

*Deficient Performance*

In determining whether defense counsel's performance was deficient, a K.S.A. 60-1507 movant must show that

> "'counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015).

Both the district court and the Court of Appeals characterized Pittman's line of questioning as trial strategy. Citing *Flynn v. State*, 281 Kan. 1154, Syl. ¶ 5, 136 P.3d 909 (2006), the panel recognized this court's view that "strategic decisions made by trial counsel based on a thorough investigation are virtually unchallengeable." *Fuller*, 2013 WL 6164528, at *5; see *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Fuller appears to concede that Pittman's questioning was the result of a strategic choice. He relies on statements by this court that "[m]ere invocation of the word 'strategy' does not insulate the performance of a criminal defendant's lawyer from constitutional criticism." *Wilkins v. State*, 286 Kan. 971, 982, 190 P.3d 957 (2008); see *Sola-Morales*, 300 Kan. at 887. Regardless of any strategic motivation, Fuller argues that Pittman's performance was deficient based on the type of questions Pittman asked, his failure to

15

prepare Fuller for those questions, and Pittman's failure to explain to the jury "why counsel was indicting his own client." Fuller contends that Pittman "knowingly and purposefully misled" him about the questions Pittman planned to ask, that Pittman called him a liar and a rapist repeatedly in front of the jury in a "negative and reprehensible" attack, and argues that he was left to present his defense without an advocate because Pittman "essentially joined forces with the prosecutor during his direct examination." Fuller further contends that it was "improper and unethical" for Pittman to comment on Fuller's credibility.

Before the Court of Appeals, the State argued Pittman's questions to Fuller needed to be viewed in context. It noted that Pittman's direct examination of Fuller consisted of 36 pages of trial transcript. The State informed the panel that Pittman had asked numerous open-ended questions that allowed Fuller to tell his version of events to the jury. In addition, the State pointed to the open-ended questions that Pittman had asked when concluding his direct examination, which had allowed Fuller to reiterate that the sexual contact was consensual. The State acknowledged that Pittman's "pointed questions" appeared "unconventional if considered in a vacuum," but it asserted that, when viewed in context, "it is evident that counsel was pursuing a strategic course of action that allowed movant to directly deny the charges."

The State countered Fuller's claim that he had been "blind-sided" by Pittman's questions by directing the panel's attention to Pittman's testimony at the evidentiary hearing. Pittman testified that he had told Fuller he would ask him "point blank" if he had sex with C.K. and "[D]id you rape her, et cetera." The State also pointed to the list of questions Pittman had provided to Fuller at pretrial and compared them to many of the questions asked. The State also pointed to Fuller's testimony at the evidentiary hearing, in which Fuller acknowledged that Pittman had never told him he would ask questions *only* from the list.

16

To the extent Fuller asserts that the jury could have been confused by Pittman's questioning, the State noted that both Pittman's opening statement and closing argument included statements that the sexual contact was consensual. Under these circumstances, according to the State, "there was no need for counsel to take the unusual step of expressly explaining his [direct examination] strategy to the jury." The State specifically noted that Pittman's follow-up, open-ended questions allowed Fuller to explain his denials more fully, giving a "clear signal" of Fuller's position to the jury.

Considering the strong presumption that Pittman's conduct fell within the wide range of reasonable professional assistance, the State persuades us.

Generally "'[i]t is within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions.'" *Sola-Morales*, 300 Kan. at 887. Among these strategic decisions is how to phrase and present questions to a client on direct examination. In this case, it appears Pittman elected to employ heavy sarcasm as a rhetorical device. Although we may differ on the likely effectiveness of his choices, Pittman's performance did not fall below an objective standard of reasonableness in this regard. As the State insists, context matters, and it demonstrates here that Pittman exceeded the Constitution's minimum standard. Pittman discharged his duty to prepare himself and Fuller for trial. *State v. Orr*, 262 Kan. 312, 333, 940 P.2d 42 (1997). He fully presented Fuller's consent defense in his opening statement and in closing argument. In the meantime, his direct examination of Fuller was designed to elicit and did elicit strong denials from his client. Pittman used the pointed questions as signposts throughout the direct examination, following up with open-ended questions, that allowed Fuller to explain. Contrary to Fuller's claim that he faced two prosecutors, we are certain that a prosecutor would not have been so magnanimous. Similarly, as the panel noted, had Fuller appeared upset or flustered, Pittman testified at

17

the evidentiary hearing that he would have changed course. Again, as the Court of Appeals panel noted, a "prosecutor would not have stopped." *Fuller*, 2013 WL 6164528, at \*6.

Fuller's final deficiency allegation that Pittman's "attack of his own client [was] negative and reprehensible, [and] it was a violation of trial counsel's ethical duties and[,] therefore, deficient" under Kansas Rule of Professional Conduct 3.4(e) (2015 Kan. Ct. R. Annot. 609) (lawyer shall not comment on credibility of a witness), is not supported by the record. Pittman's questions on this point were setups for Fuller to justify inconsistencies in statements Fuller had made to the police. On redirect examination, Pittman asked Fuller a series of questions about the circumstances surrounding Fuller's interrogation, which suggested that the interrogation was an uncomfortable experience.

In summary, Pittman consistently advocated for the innocence of his client before and throughout trial including during his direct examination of Fuller. Fuller has not demonstrated that Pittman's direct examination of Fuller qualified as deficient performance under *Strickland*.

*Conflict of Interest*

Fuller also argues Pittman's direct examination of Fuller created a conflict of interest.

As our previous discussion demonstrates, there is no merit to this argument. Pittman did not function as a second prosecutor during direct examination of Fuller. There was no complete denial of counsel at a critical stage of the proceeding under *Cronic*. Moreover, Fuller does not allege any personal conflict of interest under *Mickens*.

18

*Defense Counsel's Failure to Call Witness*

Fuller argues Pittman was constitutionally ineffective for failing to call a witness who would testify that C.K. was a flirt and a tease. This ineffectiveness argument was decided adversely to Fuller before the evidentiary hearing was held. The district judge memorialized the decision in an order filed on November 22, 2011.

The Court of Appeals held that it lacked jurisdiction to consider this issue, relying on the language in Fuller's notice of appeal stating that he was appealing "from the judgment entered May 17, 2012, and filed with the Court on June 08, 2012, denying his [motion] for relief under K.S.A. 60-1507" and the failure of the notice to include a more inclusive "catch-all phrase." *Fuller*, 2013 WL 6164528, at *10.

Whether an appellate court has jurisdiction is a question of law subject to de novo review. *State v. Brown*, 299 Kan. 1021, 1027, 327 P.3d 1002 (2014).

This court recently explained:

"K.S.A. 2011 Supp. 60-2103(b) provides that '[t]he notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken.' We liberally construe K.S.A. 60-2103(b) '"to assure justice in every proceeding,"' *State v. Wilkins*, 269 Kan. 256, 270, 7 P.3d 252 (2000) (quoting *State v. Griffen*, 241 Kan. 68, 70, 734 P.2d 1089 [1987]); but there is still a substantive minimum below which a notice cannot fall and still support jurisdiction. See, *e.g.*, *State v. Coman*, 294 Kan. 84, 90, 273 P.3d 701 (2012) (notice of appeal for sentence cannot be construed to support appeal of conviction); *State v. G.W.A.*, 258 Kan. 703, 707, 906 P.2d 657 (1995) (State's appeal from judgment of acquittal insufficient to confer jurisdiction over question reserved); *Gates v. Goodyear*, 37 Kan. App. 2d 623, 626-29, 155 P.3d 1196 (notice of appeal citing two specific district court rulings insufficient to confer jurisdiction over issues not addressed in those rulings),

19

*rev. denied* 284 Kan. 945 (2007)." *State v. Laurel*, 299 Kan. 668, 673-74, 325 P.3d 1154 (2014).

The panel recognized that an appellate court should not be overly technical in its construction of notices of appeal. See *State v. Griffen*, 241 Kan. 68, 69-70, 734 P.2d 1089 (1987). But it believed specificity of Fuller's notice of appeal language would have to be "substantively rewritten" to allow it to reach the witness issue. *Fuller*, 2013 WL 6164528, at *10.

We disagree. The order explicitly covered by the notice—the one filed on June 8, 2012—is titled "Order Denying Movant Relief on his K.S.A. 60-1507 Motion." Paragraph 3 of the order reads: "On September 30, 2011, a preliminary, nonevidentiary hearing was held and this court summarily denied movant relief on his assertion of cumulative error and several assertions of ineffective assistance of trial counsel. See Order Granting Movant a Limited Evidentiary Hear[]ing on His K.S.A. 60-1507 Motion." Although the witness issue was not expressly decided on June 8, 2012, the order filed that day referenced the issue, and it was the June 8, 2012, order that denied movant relief on his K.S.A. 60-1507 motion. Moreover, "'[t]here is no showing that the notice of appeal misled the State or that anyone was surprised or prejudiced by the issues on appeal.'" *State v. Wilkins*, 269 Kan. 256, 270, 7 P.3d 252 (2000) (quoting *Griffen*, 241 Kan. at 69-70). The notice of appeal in this case was sufficient to confer jurisdiction on our appellate courts to decide the witness issue.

Because the district judge decided this issue before conducting an evidentiary hearing, our review is de novo. *Sola-Morales*, 300 Kan. at 881.

Fuller argues that Pittman was ineffective for failing to put on a witness that would have testified that C.K. "was a flirt and a tease and . . . openly pursued married men at her

20

place of work to the point of other wives having heated arguments and confrontations with her."

The State argued at the preliminary, nonevidentiary hearing on Fuller's K.S.A. 60-1507 motion that the witness' testimony would have been inadmissible under the rape shield statute. See K.S.A. 21-3525. The district judge agreed with the State when he announced his decision from the bench. In the judge's written order, however, he relied on K.S.A. 60-446 to say the proposed testimony would have been improper character evidence.

Without explanation, the Court of Appeals panel stated that the rape shield statute was inapplicable. *Fuller*, 2013 WL 6164528, at *11. The panel nevertheless held that the evidence would have been inadmissible because, to the extent C.K.'s character was at issue, the defense had put it in issue and could not be permitted to exploit that fact. The panel ultimately concluded that Pittman's decision not to have the witness testify was tactical and, even if error, did not prejudice Fuller because he had been able to testify that C.K. was a flirt and a tease and Pittman had elicited similar testimony from a detective during the detective's cross-examination.

Even if the rape shield statute does not directly apply—an issue we need not decide—the rationale behind the statute is instructive. "'The Kansas [rape shield] statute merely serves to focus both judges' and attorneys' attention upon the fact that the victim's prior sexual activity is not generally relevant, reminding them that a victim's lack of chastity has no bearing whatsoever on her truthfulness and generally has no bearing on the important issue of consent.'" *State v. Atkinson*, 276 Kan. 920, 926, 80 P.3d 1143 (2003) (quoting *In re Nichols*, 2 Kan. App. 2d 431, 433-34, 580 P.2d 1370, *rev. denied* 255 Kan. 844 [1978]); see *State v. Jones*, 168 Wash. 2d 713, 723, 230 P.3d 576 (2010)

(rape shield statute "created to erase the misogynistic and antiquated notion that a woman's past sexual behavior somehow affected her credibility").

Fuller argues that the purpose of the evidence he contends should have been offered at trial would have been to attack C.K.'s credibility and character. But testimony indicating that C.K. was a flirt or a tease generally would not have made any material contribution to a showing that she consented to sexual contact with Fuller on the day of the alleged attack. The evidence was not relevant and was therefore inadmissible. *State v. Huddleston*, 298 Kan. 941, 959, 318 P.3d 140 (2014).

Fuller's argument that the State put C.K.'s character in issue when it inquired on cross-examination about his testimony that C.K. had flirted with him is unsupported by the record. It was the defense, and not the State, who attempted to put C.K.'s character in issue. On cross-examination of an investigating detective, Pittman asked about statements Fuller had made during his interrogation. Those statements indicated that Fuller's fiancé and her aunt thought C.K. was "too flirty." During his direct examination, Fuller claimed C.K. had been flirting with him. The State was permitted to cross-examine Fuller on this topic, see *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998) ("Questions asked on cross-examination must be responsive to testimony given on direct examination, or material or relevant thereto."), without opening the door to a defense attack on C.K.'s character.

Fuller has failed to demonstrate that Pittman was ineffective when he elected not to proffer a witness who could have provided only irrelevant and inadmissible testimony. Fuller's request that this particular facet of his ineffective assistance claim be remanded to the district court to hold an evidentiary hearing must be denied.

*Defense Counsel's Failure to Argue Fuller's Pro Se Motion for New Trial*

As with the first issue discussed, this issue was decided adversely to Fuller after an evidentiary hearing in the district court. Accordingly, our standard of review requires us to determine whether substantial competent evidence supports the district court's factual findings and whether those factual findings support its conclusions of law. We review the district court's conclusions of law de novo. *Adams*, 297 Kan. at 669.

Fuller argues that Pittman was ineffective at the motion for new trial hearing because Pittman had a conflict of interest. In order for Pittman to defend himself against Fuller's ineffective assistance of counsel allegations lodged at the hearing, Fuller contends, Pittman was required to advocate against Fuller's pro se motion for new trial. We agree that a conflict between Fuller and his counsel arose at the hearing.

"'[W]here a constitutional right to counsel exists, there is a correlative right to representation that is free from conflicts of interest.'" *State v. Sharkey*, 299 Kan. 87, 96, 322 P.3d 325 (2014) (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 [1981]). Fuller filed his pro se motion within the then 10-day limitation period of K.S.A. 22-3501(1). The hearing on Fuller's pro se motion for new trial was a critical stage of the proceeding, and he was entitled to conflict-free counsel. *Sharkey*, 299 Kan. at 96.

In *Sharkey*, defendant Tyjuna M. Sharkey argued that "the trial judge erred in denying his pro se motions for new trial—based on ineffective assistance of counsel—without first appointing new conflict-free counsel to assist him in arguing the motions." 299 Kan. at 88-89. Sharkey focused his argument on the trial judge's failure to conduct an inquiry or appoint new counsel, and he sought remand so that conflict-free counsel could argue his motions for him.

This court found conflicted defense counsel's inaction compelling:

"Sharkey's defense counsel did not argue his own ineffectiveness, nor did he seek to withdraw so that Sharkey could be represented by conflict-free counsel at the motions hearing. Further, no evidence was presented in support of Sharkey's pro se motions, and defense counsel did not make any statement regarding those motions. Because of defense counsel's inaction, Sharkey was essentially required to present pro se legal arguments in support of his motions for new trial even though the State was represented by counsel." 299 Kan. at 98.

This court held that the circumstances made the potential for conflict apparent, and the judge was required to make an appropriate inquiry. Its absence constituted an abuse of the judge's discretion. 299 Kan. at 98.

Turning to the effect of the abuse of discretion, this court held that a showing of prejudice was not required because *Cronic* applied. "Sharkey was constructively denied his right to counsel because of his attorney's conflict of interests; he effectively had no legal representation at the motions hearing." 299 Kan. at 101 (citing *Mickens*, 535 U.S. at 172 n.5). Accordingly, we presumed the existence of prejudice, and we ordered the case remanded with instructions to hold a new hearing on Sharkey's pro se motions for new trial after he was appointed new, conflict-free counsel to argue the motions. 299 Kan. at 101.

In this case, both the district judge and the Court of Appeals panel concluded that Pittman never gave up his role as Fuller's advocate at the motion for new trial hearing. *Fuller*, 2013 WL 6164528, at *8. Our review of the record simply does not support that conclusion.

24

First, it is important to recall that two motions for new trial were before the court at the hearing—one filed by Pittman, along with a motion for judgment of acquittal, and the other filed pro se by Fuller. Pittman's brief argument at the hearing in favor of his motions consisted of his statement that he thought "it was an extremely clean trial" and that he "thought things went in our favor." The district judge denied Pittman's motions. The district judge then turned to Fuller's pro se motion for new trial. The only issues raised in the motion for new trial were tied to complaints Fuller had about members of his jury. Specifically, Fuller argued that one juror was a friend of a detective in the case, that the foreman was a retired employee from the Sedgwick County courthouse, that another juror was the softball coach of the son of an employee in the prosecutor's office, that another juror was the victim of assault in her home, that another juror was the mother of a parole officer, and that one juror dozed off during the proceedings. The district judge asked Pittman if he planned to present argument or if Fuller "wish[ed] to present his own argument." Instead of arguing in support of Fuller's pro se motion for new trial, Pittman said only, "[w]e kind of get into a mine field," and suggested that Fuller argue his own motion. At that point in the hearing, there was nothing to suggest to the district judge that a conflict existed between counsel and client.

Fuller began by arguing that he did not have an impartial jury for the reasons set out in his pro se motion for new trial. But he quickly changed gears, expanding his list of complaints, essentially, orally amending his written pro se motion, on the spot. He asserted that the State violated a motion in limine prohibiting evidence about his drug use. He noted that Pittman had objected but had not filed a motion for mistrial, which Fuller considered the only curative measure for the violation. Fuller then alleged that there was evidence not admitted at trial that would have proved his innocence. After the district judge followed up, Fuller informed the court that phone records and an unnamed witness would have proved he was in C.K.'s home with permission. Fuller told the district

25

judge, "I asked my lawyer to get the records, and the records [were] never gotten and I believe that's critical of proving—helping prove my innocence."

The district judge then asked Pittman whether he had anything to add. Pittman told the judge that he had "a slightly different take on those issues which I can express to the Court in detail issue by issue, if the Court wants to hear that." The district judge told Pittman to proceed however he saw fit.

Pittman elected to address Fuller's new complaints individually. With respect to the phone records, he said, "[M]atters of strategy are not to be dictated by the client but are up to the attorney." According to Pittman, the phone records could have shown an inconsistency in the victim's recollection of the events, but there was a greater risk that the phone records would have damaged Fuller's credibility, a risk Pittman was unwilling to take. Next Pittman argued that the selection of jurors also involved strategy in the exclusive province of defense counsel, although he noted that he had discussed the potential jurors with Fuller. Pittman concluded on this point by stating, "I stand by the individuals that we picked." Pittman transitioned to the next topic by saying that "Mr. Fuller may be mistaken in his recollection of several things." He then said he had interrupted the prosecutor before any motion in limine violation and returned to the juror issues. He defended each juror, attempting to negate each challenge his client had raised. Pittman ultimately concluded: "I stand by the jury we picked. I thought it was a good jury. So I don't think that there's a problem with those individuals," and he again asserted that Fuller had received a "clean trial."

From this comprehensive review of this portion of the transcript of the motion for new trial, it is abundantly clear to us that a conflict between Fuller and his defense counsel developed in front of the district judge when Pittman elected to defend himself against Fuller's allegations. Fuller asserted that Pittman failed to perform adequately.

26

Pittman's argument was a point-by-point ineffective assistance of counsel defense directly opposing his client's motion for new trial. Instead of stopping the proceeding and appointing conflict-free counsel, the district judge then allowed the prosecutor to weigh in on Fuller's pro se motion. The prosecutor said that Pittman was "correct when he state[d] that there are certain strategic decisions that are up to the lawyer, and it sounds like it was in consultation with Mr. Fuller." The prosecutor then addressed the juror issues raised in the pro se motion.

After the prosecutor's argument, the district judge asked Fuller if he had any rebuttal, but, before Fuller could speak, Pittman asked if he could "just add one thing, and it's important, for the record." Pittman then specifically defended his decision not to challenge a juror who had been a victim of assault in her home as "good strategy," noting she had been the victim of assault and not a sexual assault. He said, "I think it was good strategy and I'd do it again."

Fuller then spoke, telling the district judge that Pittman's failure to admit the phone records "just shows that the—I was not represented to the best of—I wasn't represented fully to the best of Mr. Pittman's ability." Fuller then continued—this time with a broad attack on the quality of Pittman's representation. He again touched on the complaints he had made earlier. He eventually also included an allegation that the prosecutor committed misconduct by questioning him on matters covered in the motion in limine.

Following Fuller's rebuttal, the district judge returned to Pittman to ask if he had anything to add. Pittman said that had he obtained the phone records, he would not have used them because "I don't think it's good strategy."

At that point, the district judge said that he recognized the written pro se motion only addressed jury issues but that he believed he "could still rule on the merits of those matters raised orally."

Regarding the jurors, the district judge said that each had expressed an ability to be fair and impartial, and, accordingly, none was subject to a challenge for cause. The judge then stated: "It seems to me that the real argument here is that counsel, trial counsel, was ineffective at trial for failing to strike these jurors with the use of peremptory challenge, and I think that all of that is a matter of trial strategy." The judge then ruled that—"for the reasons expressed by Mr. Pittman" and because Pittman and Fuller had been allowed time alone together during which they could have discussed jury selection choices—the decisions on peremptory challenges were "reasonable and appropriate trial strategy."

The judge then particularly addressed the juror that Fuller had argued fell asleep during trial. The judge said he did not see the juror sleeping and knew the lawyers had not seen the juror sleeping. He therefore saw no "reason to grant a new trial based on that."

The district judge then turned to the other subjects Fuller had raised orally.

The judge ruled that the State had not violated the order in limine by referencing Fuller's whereabouts at a particular time. With respect to evidence of drug possession or use, the judge affirmed that the order in limine prohibited introduction of testimony that Fuller had marijuana in his pocket at the time of his sexual encounter with C.K. The judge said that he did not recall Pittman making a contemporaneous objection at the point when the prosecutor questioned Fuller about drugs, but he said that any error arising out of the question or Fuller's denial in response would qualify as harmless.

28

Moving to the subject of the phone records, the judge said: "[A]gain, what we're really arguing here is ineffective assistance of counsel." He then said:

"My observation was that Mr. Pittman was very able in his argument of this case, that the decisions that he made are decisions that any competent trial counsel would make. I don't believe that Mr. Pittman's conduct in this trial fell below the standard that we expect of lawyers.

"Frankly, I think that all of these complaints are strategic complaints, and you don't get new trials because the strategy that you pursued didn't pan out. If that was the case, we'd never have the end of any trial. We'd always be able to go back and second guess every trial and say if I'd only done this or done that, we'd have had a different outcome. Such an approach would lead to the retrial of cases until you get to the verdict that you want, and that's just not the way it works. The standard is whether or not Mr. Pittman's trial strategy and the manner in which he defended this case fell below what we would expect of reasonable trial counsel, and I don't think it did in this case. I think he was competent and able in his defense.

"More to the point, with respect to the phone records, as I understand it, it goes to the question of the credibility of the victim in this case. And as Mr. Pittman has pointed out, her credibility was attacked numerous times by Mr. Pittman by showing the inconsistencies in her statements to the detective at various times during the investigation. I don't think that the phone records would have added materially to that, certainly would not have changed the outcome of the trial. I think that the decision not to subpoena those records was a reasonable decision that capable and competent trial counsel would make.

"So, for those reasons, the Court would overrule the motion for new trial and reversal."

29

The district judge then moved directly to Fuller's sentencing, which was continued for 3 weeks to allow Pittman to secure the attendance of two character witnesses Fuller wished to call and to gather information to resolve criminal history objections.

This case differs somewhat from *Sharkey* because here, instead of proceeding on pro se motion after failing to inquire into a potential conflict between Fuller and his counsel, the district judge proceeded after an actual conflict became apparent during a hearing. But the effect is nearly identical and just as problematic. Pittman did not argue his own ineffectiveness. And, instead of standing silent as *Sharkey*'s lawyer did, Pittman explicitly and repeatedly advocated for his own effectiveness. Indeed, he was persuasive. The judge referenced and relied upon Pittman's statements more than once. Meanwhile, Fuller was required to make his own arguments in support of his motion without the benefit of counsel. This means that this case either falls under *Cronic*, under which Fuller is "spared . . . the need of showing probable effect upon the outcome" in order to obtain relief, or it falls under what we have called the *Mickens* exception, which is the third subcategory of attorney conflict-of-interest cases, for which the United States Supreme Court has not yet articulated "what additional burden, *e.g.*, prejudice or adverse effect, a defendant must satisfy before receiving relief." *Sola-Moralez*, 300 Kan. at 883-84.

Under the circumstances of this case, where the existence of a conflict between Fuller and his lawyer is established beyond dispute by the hearing transcript, and the same transcript emphatically shows that conflicted counsel argued extensively and successfully against his client's position and the judge relied upon counsel's statements to issue his ruling, we hold that Fuller has met any burden that might be imposed. *Cf. State v. Prado*, 299 Kan. 1251, 1260, 329 P.3d 473 (2014) (where counsel argued expressly against existence of actual conflict shown by record, adverse effect present; prejudice presumed).

As a remedy, Fuller asks this court to reverse the district judge's denial of his pro se motion for new trial, and, presumably, to remand for a new motion hearing after the appointment of conflict-free counsel. This would be the proper remedy if this issue were before us on direct appeal. See *Sharkey*, 299 Kan. at 101. But here the issue comes before the court on Fuller's K.S.A. 60-1507 motion. In these proceedings, Fuller has had the benefit of what we presume has been conflict-free counsel to assert and argue Pittman's ineffectiveness. Some of the arguments that Fuller raised pro se have now been presented with the benefit of conflict-free counsel and nevertheless rejected by the district court, the Court of Appeals, and now this court. Remand to relitigate these thrice-rejected claims is not appropriate.

Yet we are mindful of the fact that Fuller raised an ineffectiveness claim on direct appeal, expressly seeking relief from the Court of Appeals because of Pittman's failure to act as his counsel at the motion for new trial hearing. See *Fuller*, 2009 WL 4639506, at *3. Without the benefit of this court's later-published *Sharkey* opinion, and because of the framing of the issue and arguments, the panel did not thoroughly explore the issue on Fuller's direct appeal. Under different circumstances, we are certain the panel would have ordered relief similar to that we granted in *Sharkey*. Instead, it did what made sense at the time: It directed Pittman to K.S.A. 60-1507 as a vehicle for pursing his ineffective assistance of counsel claim.

We recognize that not every pro se argument Fuller raised at his motion for new trial hearing was raised again in his K.S.A. 60-1507 motion. So saying that Fuller is in exactly the same position today as he would have been if he had conflict-free counsel at his motion for new trial hearing is not wholly accurate, even when weighed against the general proposition that an issue not raised, briefed, or argued is deemed abandoned or waived. See *State v. Jones*, 300 Kan. 630, 639, 333 P.3d 886 (2014).

31

K.S.A. 60-1507(b) allows a court to "grant a new trial or correct the sentence as may appear appropriate." We read this broad language to allow us to craft an appropriate remedy in this unusual case, *i.e.*, to remand this case to the district court to hold a hearing on those arguments Fuller raised before the district court in support of his pro se motion for new trial that have not already been decided adversely to him in these K.S.A. 60-1507 proceedings. These arguments include Fuller's claim that Pittman failed to obtain and use exculpatory phone records or call a witness who could have demonstrated Fuller's innocence. They also include juror issues not raised in Fuller's K.S.A. 60-1507 motion and any prosecutorial misconduct or ineffective assistance of counsel argument based on an alleged violation of the motion in limine. Our remand should not be read to express a view on the merit of any of Fuller's claims, only to validate his right to pursue them with assistance from conflict-free counsel. See *State v. Gleason*, 277 Kan. 624, 631, 652, 88 P.3d 218 (2004) (once defendant filed pro se amendment to motion for new trial alleging attorney conflict of interest, second motion alleging ineffective assistance, district judge appointed new, conflict-free counsel to assist with pro se motions; new counsel relieved of duty after motions decided adversely to client; trial lawyer handled later sentencing).

CONCLUSION

This case is remanded to the district court with instructions to hold a new hearing based on the arguments before the district court during Fuller's pro se motion for new trial hearing that have not yet been disposed of adversely to him in these K.S.A. 60-1507 proceedings. If on remand the district judge rejects the arguments and denies the motion, reversal and a new trial is unnecessary. If the judge grants the motion, reversal and a new trial will be granted and new trial counsel appointed.

Affirmed in part, reversed in part, and remanded to district court with directions.