NOT DESIGNATED FOR PUBLICATION

No. 116,616

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DOMINIC CANTU,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed May 4, 2018. Reversed.

*Mitch E. Biebighauser*, of Bath & Edmonds, P.A., of Overland Park, for appellant.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM: Dominic Cantu appeals the suspension of his driver's license by the Kansas Department of Revenue (KDR) after the Johnson County District Court denied his petition for review. Cantu submits five ways the district court committed error when it affirmed the suspension order: (1) The agency had divested itself of jurisdiction to order his license suspension when it initially dismissed the proceedings against him; (2) the district court's factual findings were insufficient to affirm the suspension; (3) the exclusionary rule required the suppression of the results of his breath test; (4) the notice he received on the night of his arrest was unconstitutional and did not substantially comply with the statutes; and (5) the suspension violated his right to due process.

1

Because we agree with Cantu that KDR had divested itself of the authority to act in his case, we reverse the district court's decision affirming the suspension order.

FACTS AND PROCEDURAL BACKGROUND

On July 11, 2015, just before 10 p.m., Officer Cara Stock of the Merriam Police Department stopped Dominic Cantu for failing to maintain a single lane of traffic. She saw several indicators he was under the influence of alcohol, including bloodshot eyes and an odor of alcohol and she arrested Cantu for driving under the influence of alcohol (DUI). A search of his vehicle revealed an open can of beer in a cooler. Stock read the implied consent notices to Cantu and he initially refused to take a breath test to determine the concentration of alcohol. Approximately an hour later, Cantu did submit to a test on an Intoxilyzer 8000 that showed his breath alcohol concentration was .154. Cantu was then given a copy of the Officer's Certification and Notice of Suspension, form DC-27, providing notice that his driving privileges would be suspended unless he made a timely request for a hearing.

The signature block in the certification section of the DC-27 Cantu received had been filled out. The blank line for "Title and name (printed)" shows "PO Cara Stock," but the "Signature of Law Enforcement Officer" four lines below reads, "C. Palmer #1876." The printout from the Intoxilyzer 8000 shows "Palmer" as both the arresting officer and the instrument operator. The printed name under the signature line on the printout also reads "Palmer"; however, in handwriting that appears consistent with the DC-27, the signature above that line is "Stock #1876." The Implied Consent Advisory, form DC-70, given to Cantu on the night of his arrest was signed by "Stock #1876." A July 28, 2015 affidavit from the Kansas Department of Health and Environment affirmed the certification of the Intoxilyzer 8000 used to test Cantu on July 11, 2015, as well as the certification of Cara Stock as an operator.

2

On July 17, 2015, Cantu asked KDR for an administrative hearing on his license suspension. His attorney's letter requesting the hearing asked "that a subpoena be issued to any and all certifying officers, including but not limited to Officers Cara Stock and Officer Palmer."

KDR then issued two letters on July 30, 2015. One referenced Cantu's case and was addressed to Stock, notifying her:

> "The Division is required to dismiss its action suspending a person's driver's license if the 'DC-27 []' does not meet statutory requirements. The 'DC-27 []' form regarding the above individual has been dismissed for the reason(s) noted below."

The reason noted was: "Both officer's [*sic*] failed to sign the DC-27." The second letter was addressed to Cantu, notifying him:

> "Pursuant to K.S.A. 8-1002, the suspension of your driving privileges for either refusing to take a chemical test or failing the test . . . on the date shown above [7-11-15] has been administratively dismissed for the reason(s) checked below. Since the administrative hearing that you requested is no longer needed, no administrative hearing will be set."

As in the letter to Stock, Cantu's letter showed the dismissal was because of the failure of both officers to sign the DC-27.

Eight days later, on August 7, 2015, KDR sent Cantu's attorney a letter declaring: "The letter dated July 30, 2015 dismissing the administrative action has been rescinded." This letter stated the dismissal "because both officers did not sign the DC-27" was incorrect because "Officer Palmer and Officer Stock are the same person." Finally, the letter advised Cantu's counsel that the case would be set for hearing. The confusion apparently arose because of the officer's marriage and change of surname, which led KDR to assume the involvement of two officers.

3

KDR sent Cantu a further letter dated August 8, 2015, notifying him that his request for an administrative hearing had been received and he would be notified of the date, time, and location of the hearing. His driving privileges remained valid pending the outcome of his hearing. In a letter to KDR dated August 12, 2015, Cantu's counsel objected to KDR's announcement it had rescinded its administrative dismissal of the case to suspend Cantu's license. The letter pointed to the statement in KDR's July 30 letter stating the suspension had been dismissed and argued that action was final, not subject to reversal by KDR.

KDR then sent Cantu a notice dated August 14, 2015, advising that his administrative hearing had been scheduled for September 22, 2015; KDR issued a subpoena for Stock to testify at the hearing. The day before the administrative hearing, Cantu's attorney filed a motion with KDR asking for dismissal of the administrative action, arguing in part that the agency's dismissal was final and not subject to reinstatement.

The administrative hearing notes record issues Cantu raised. Cantu argued lack of probable cause or reasonable grounds to arrest or test him and also argued the agency did not have jurisdiction to conduct the hearing because the proceedings had been dismissed and then reinstated without authority. The hearing officer rejected Cantu's arguments and affirmed the agency decision to suspend and restrict Cantu's driving privileges. Cantu filed a timely petition for review in the Johnson County District Court and KDR sent him a letter informing him that his driving privileges had been extended again until the time a decision on his petition for review became final.

Cantu filed two motions with the district court asking that KDR's suspension efforts be dismissed. The first sought dismissal for lack of subject matter jurisdiction; the second was based on an exclusionary rule argument and claimed deficiencies in the DC-70. The district court heard arguments on the motions on May 24, 2016, and the parties

4

agreed to forgo any evidentiary hearing on Cantu's petition until after the district court ruled.

The district court issued an order denying Cantu's petition for relief and affirmed the agency action. Cantu timely appeals.

ANALYSIS

*Effect of KDR's dismissal of the proceedings to suspend Cantu's license*

*Standard of review*

Cantu's first issue is based on his claim that KDR had divested itself of jurisdiction to proceed against him and had no authority to regain that jurisdiction. Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

*Positions of the parties*

Cantu submits that KDR's dismissal of its suspension action against him, of which he received notice through the July 30, 2015 letter, was not subject to rescission. He argues KDR "no longer had subject matter jurisdiction to suspend [his] license" and, although the dismissal was clearly authorized by statute—K.S.A. 2017 Supp. 8-1002(f)— there was no corresponding statutory provision allowing it to rescind the dismissal. Cantu characterizes the KDR dismissal as a final agency action within the meaning of K.S.A. 77-607(b)(1) and claims the district court erred when it denied his motion for dismissal based on KDR's lack of jurisdiction.

5

KDR adopts the district court's reasoning that if Cantu thought KDR's dismissal was a final agency action, his avenue for relief was to file a petition for judicial review of the rescission when he received notice of that reversal. Since Cantu filed no petition for review within 30 days of the rescission but "[i]nstead . . . filed a motion with the hearing office to dismiss the administrative suspension," KDR contends "[a]ppellant abandoned any legal claim he may have regarding the jurisdiction issue." KDR further characterizes any effect of its dismissal as harmless error, since "at all times Appellant maintained his driving privileges; there has been no suspension of his license during this entire process."

*Discussion*

Central to this question is the source of the authority or jurisdiction that Cantu claims KDR lacked and that the agency said it never gave up.

> "Administrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must come from within the statutes. There is no general or common law power that can be exercised by an administrative agency." *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 378, 673 P.2d 1126 (1983).

Here, the relevant statute is the one vesting KDR with authority to suspend a person's driver's license for failure of, or refusal to submit to, a test for alcohol. K.S.A. 2017 Supp. 8-1002.

Whenever a test for alcohol is requested pursuant to the implied consent act governing DUI and license suspensions and results in a test failure or refusal, K.S.A. 2017 Supp. 8-1002(a) requires preparation of a law enforcement officer's certification. That section details the requirements for the certification and states that KDR's receipt of the certification triggers its authority to proceed with suspension proceedings under that section. As part of that procedure, the section requires the following:

6

"Upon receipt of the law enforcement officer's certification, the division shall review the certification to determine that it meets the requirements of subsection (a). Upon so determining, the division shall proceed to suspend the person's driving privileges in accordance with the notice of suspension previously served. *If the requirements of subsection (a) are not met, the division shall dismiss the administrative proceeding and return any license surrendered by the person.*" (Emphasis added.) K.S.A. 2017 Supp. 8-1002(f).

When KDR reviewed the certification sent for Cantu's suspension, the confusion over the officer's name led the agency to believe the requirements were not met and, when that happens, "the division shall dismiss the administrative proceeding," which was the action it took.

The July 30 letter informed Cantu that "[p]ursuant to K.S.A. 8-1002, the suspension of your driving privileges . . . has been administratively dismissed for the reason(s) checked below." The letter then stated both officers had failed to sign the DC-27. The letter to Cantu's counsel, dated eight days later, pronounced that "[t]he letter dated July 30, 2015 dismissing the administrative action has been rescinded." No authority for rescission of the dismissal was cited to correspond to the authority that had been given for the dismissal itself.

KDR contends if Cantu thought there was no jurisdiction to rescind the dismissal he committed a fatal procedural error by not seeking judicial review within 30 days of the August 7 letter. We disagree.

As one of the agencies of the state of Kansas, KDR is an "agency" as that term is used in the Kansas Judicial Review Act (Act). K.S.A 77-602(a). And under the Act, "agency actions" include "an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise." K.S.A. 77-602(b)(3). As the Act is structured, only limited exceptions are made to the general rule that review is authorized

7

for a "final agency action," which is defined to mean all or part of an agency action that is not "nonfinal." K.S.A. 77-607(b)(1). And nonfinal agency actions are those that are "the whole or a part of an agency determination, investigation, proceeding, hearing, conference or other process that the agency intends or is reasonably believed to intend to be preliminary, preparatory, procedural or intermediate." K.S.A. 77-607(b)(2).

Cantu asserts that the dismissal of KDR's suspension proceedings, which the July 30 letter announced had already occurred, was a final agency action taken pursuant to statute. The above statutory provisions support his claim. The dismissal of an action cannot be considered to be preliminary or preparatory, it is the final step of that proceeding. Cantu, however, would have had no reason to seek judicial review of the dismissal that removed the threat of license suspension; he would naturally take no further action, and KDR's letter told him no hearing would be needed or set and gave him information to obtain a new license if his own had not been enclosed.

KDR claims Cantu should have petitioned for judicial review when he was told the suspension proceedings had been reinstated, but reinstatement of proceedings which had not yet really begun is the antithesis of a "final" action. As it was, Cantu's counsel immediately responded to KDR by letter, objecting that the dismissal was final and asking for any authority KDR believed authorized it to unilaterally reverse its dismissal. Cantu's counsel then filed a motion to dismiss on jurisdictional grounds at the administrative hearing level and, after the hearing officer denied dismissal, *did* petition for judicial review based on the agency's final administrative action and filed a further motion to dismiss with the district court. Finally, when the district court denied that motion, Cantu again raises it on appeal. Cantu has asserted his position at every level and sought judicial review when he actually had a final order. Judicial review at the outset of the reinstated proceedings would have been premature.

As KDR states in its brief, "[t]he government is not a perfect institution, and mistakes will be made." KDR argues its error in dismissing Cantu's case was based on a reasonable misunderstanding and caused little prejudice. On these facts that may be true, but those factors do not create jurisdiction where the Legislature has given none. KDR has explicit authority—and direction—to dismiss if its required review upon receiving the certification shows any deficiency. KDR identified a problem and Cantu's suspension case was dismissed as required by the statute. At that point, KDR's jurisdiction over any suspension of Cantu's license based on the July 11, 2015 stop ended. KDR has directed us to no authority for the resurrection of the case. The fact that no institution is perfect does not mean every mistake is paired with the authority for its correction.

Besides the lack of specific authority, finality alone is a strong argument against allowing KDR to fill the statutory vacuum with some other kind of authority to act as it did. In this case, the confusion over the officer's names was found relatively quickly and the purported rescission was announced eight days later. Without statutory authority there is no basis to decide whether rescission 60 days after dismissal is acceptable; or 6 months; or 6 years. In those situations, at what point may a licensee actually know that an invisible asterisk has been removed and "dismissal" actually means just that?

KDR had authority to dismiss Cantu's case. It had no authority to rescind its dismissal and reinstate the case. The district court erred in denying Cantu's motion to dismiss for lack of jurisdiction and in affirming the agency's suspension of his license.

Because of our holding on Cantu's first issue, his remaining issues are moot and need not be discussed.

Reversed.