NOT DESIGNATED FOR PUBLICATION

No. 121,327

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARC ANWAR WILLIAMS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed July 24, 2020.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and ATCHESON, JJ.

PER CURIAM: Prisoner Marc Anwar Williams appeals the district court's denial of his motion attacking his sex crime convictions. He asks us to reverse and remand for a "full-blown" evidentiary hearing on his motion. The court took evidence on his motion and determined that there were no grounds for relief. Because the evidence supports the court's ruling, we see no need to remand and affirm the district court's ruling.

1

*Williams committed his crimes against S.G.*

The details of Williams' crimes against S.G. are not pertinent here. They can be found in the opinion affirming his convictions. See *State v. Williams*, No. 114,962, 2017 WL 2832629, at *1-2 (Kan. App. 2017) (unpublished opinion). Basically, Williams began sexually molesting S.G. when she was eight years old. The crimes surfaced about six years later when her mother made her tell the police. Williams was criminally charged after the authorities completed their investigation. Charles Lamb was appointed to defend Williams. Williams waived his right to a preliminary hearing and the matter was put before a jury. The girl had difficulties testifying at trial and was slow in her responses to questions. Williams offered no testimony in his defense. The jury convicted him on all counts.

*His habeas corpus motion claims ineffective assistance of trial counsel.*

Without benefit of legal assistance, Williams filed a K.S.A. 60-1507 motion attacking his convictions. He claimed that Lamb was ineffective because he:

- failed to impeach the prosecutor for making inconsistent statements;
- should have secured an expert to cross-examine and impeach the prosecutor;
- forced him to waive his right to a preliminary hearing when Lamb knew he was "under heavy medication";
- failed to conduct a preliminary hearing for use in cross-examining the State's witnesses at trial;
- failed to investigate the Sunflower House video for inconsistent statements made by S.G.; and
- did not consider hiring an expert for use in cross-examining S.G. at trial.

In response, the State argued Williams' insufficient evidence and prosecutorial misconduct claims were simply allegations of trial errors that should have been addressed on direct appeal and were not appropriate in a 60-1507 motion. The State also argued that Williams' allegations that his trial attorney was ineffective were vague, speculative, and conclusory. The State asked the court to summarily dismiss Williams' motion.

*The court heard the testimony of Williams and his attorney, Lamb.*

Lamb testified he never noticed anything about Williams that made him question his mental state, but he was aware Williams had previous hospitalizations for mental health reasons. Williams did not have any trouble communicating with Lamb or understanding the charges. Lamb stated he moved to declare the defense's intent to rely on the defense of mental defect. After the Wyandotte Center found Williams competent, Lamb continued to pursue the mental defect defense. He had an independent evaluation of Williams completed by an expert who specialized in sex abuse cases. Lamb testified that the independent evaluation did not help the defense, so he did not use it or the expert at trial. Lamb did not seek out more experts. Based on the independent evaluation, Lamb believed Williams was competent to stand trial.

Lamb testified he always consults with his clients about whether they want to waive their preliminary hearing. He testified that in this case, he recommended waiver because the State was considering adding counts against Williams but would not do so if Williams waived his right to a preliminary hearing. Lamb did not expect S.G.'s testimony to change, but—if warranted—he had what he needed to impeach her testimony with her prior statements made to Sunflower House and others. Lamb testified he knew the State had enough evidence to bind Williams over for trial and he did not want to risk another potential life sentence. He said it was strategically better to defend against known charges. Lamb testified he discussed this strategy with Williams and Williams agreed. Lamb did not recall if Williams was taking medication at the time. He recalled Williams

3

did not appear to be under the influence of drugs, unable to communicate, or unable to understand the situation.

Lamb stated that the independent expert also evaluated the Sunflower House interviews of S.G. to assess the interviewer's techniques to make sure the method of questioning did not lead or mislead S.G. Again, Lamb testified that the results of this evaluation did not help the defense, so he did not call this expert. Lamb did not recall if the expert only read the transcripts of the Sunflower House interviews or if he also reviewed the videos. He testified that he would have an expert look at everything available and then give their impression, and he did so here. Even so, Lamb said the videos were not as important because S.G. was an older child when she was interviewed at Sunflower House. Lamb recalled S.G. was in high school at the time of the trial, so he was less concerned—than he would have been with a smaller child—that the Sunflower House interviewer could have planted a false memory.

Lamb recalled cross-examining S.G. at trial. He remembered some inconsistencies in her testimony but could not recall any specifics. He recalled he brought out some inconsistencies between her prior statements and her trial testimony. Lamb testified that he did his best to cross-examine her without alienating the jury because she was still a child. He stated that an attorney cannot appear to attack a child on the stand because people tend to want to protect them:  "You don't want to override your objective by your performance." Lamb testified he believed that he pointed out all of S.G.'s inconsistent statements. He also stated that if S.G.'s direct testimony revealed obvious inconsistencies, he did not need to bring it out on cross-examination, but he would just include it in his closing argument.

Lamb testified that he did not recall Williams telling him he had information that someone else abused S.G., and there was nothing in his notes on the subject. Lamb stated that if Williams had told him that, he would have investigated it at the time.

Lamb testified he did not recall Williams criticizing his services or asking for a new attorney.

For his part, Williams testified that he did not have issues with Lamb during his representation of him. Williams conceded that Lamb tried to cross-examine S.G., but "they overruled it, they said there wasn't basically nothing we could do." Williams testified Lamb revealed inconsistencies in S.G.'s statements, but the prosecutor still argued the jury should convict him. Even so, Williams said Lamb "probably could have done a better job [of impeaching S.G.]. Probably could have. I don't know."

Williams claimed he did not want to waive his right to a preliminary hearing, but Lamb told him he should waive to avoid the other possible charges. He said he did not commit any crimes, but he did not know if he waived his preliminary hearing voluntarily or was "pushed into it." He "didn't feel no type of way about it." Williams testified that S.G. told him in 2012 or 2013—about two years before he was arrested and charged in this case—that somebody else did something to her, but Williams told her he thought she was lying.

*The court denied Williams any relief.*

The court ruled that Williams' prosecutorial misconduct and insufficient evidence claims were direct appeal issues, which were inappropriate in a 60-1507 motion. The court also found that Williams' claim of prosecutorial misconduct was already addressed in his direct appeal.

The district court also found there was no credible evidence that Lamb was ineffective as defense counsel. Finally, the district court noted that Williams implied during his testimony that he was innocent. The court, however, also noted that Williams did not actually testify at the hearing that he was innocent of abusing S.G. Consequently,

the district court found no evidence supported the implication that Williams was "actually innocent" and denied his motion.

*We must follow some fundamental rules in deciding this appeal.*

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either:

- the judgment was rendered without jurisdiction;
- the sentence imposed was not authorized by law or is otherwise open to collateral attack; or
- there has been such a denial or infringement of the constitutional rights of the prisoner that it renders the judgment vulnerable to collateral attack.

K.S.A. 2019 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2019 Kan. S. Ct. R. 228) (preponderance burden). Williams contends his convictions are open to collateral attack because his trial counsel was ineffective.

After an evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law on all issues presented. Supreme Court Rule 183(j) (2019 Kan. S. Ct. R. 228). We review the court's findings of fact to determine whether they are supported by substantial competent evidence and can support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

*The record shows Lamb was not ineffective.*

Williams argues that Lamb should have "pushed the victim harder on her credibility" at his trial and suggests that he was ineffective for failing to do so. He acknowledged at the 60-1507 hearing that S.G.'s trial testimony revealed inconsistencies

6

from her prior statements. The balance of Williams' brief is silent on the subject. In other words, he fails to explain what "further pushing" would have disclosed. Williams leaves that for us to speculate about. But that is an inapt argument.

To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish both that the performance of defense counsel was deficient under all of the circumstances, and that there is a reasonable probability the jury would have reached a different result without the deficient performance—that is, that he was prejudiced by the attorney's deficient performance. *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). A reasonable probability means a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

These questions are not easy to answer. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). If counsel made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (quoting *Strickland*, 466 U.S. at 690-91).

Williams offers us nothing to overcome the strong presumption mentioned in *Kelly*.

The district court found there was "no credible evidence" to establish Lamb was ineffective as Williams' defense counsel. We agree. Lamb testified about Williams' competency, their defense strategy, his investigative efforts including those that included expert involvement and possible testimony, and his strategic reasons for his approach to cross-examining S.G. Williams did not refute any of Lamb's testimony. Lamb's testimony is a record of an attorney trying to create a defense. We will not second-guess his strategy. This record displays Lamb's exercise of professional judgement—not a lack of effort.

In fact, Williams does not argue that Lamb was deficient. He testified that Lamb accomplished what he could while cross-examining S.G. While Williams thought Lamb could have done more, he conceded he did not know. Williams also does not claim that Lamb's performance fell outside the broad range of reasonable professional assistance, nor does he claim that Lamb's approach to cross-examining S.G.—a child—was not an appropriate strategy. Nor does Williams claim that he was prejudiced by Lamb's cross-examination of S.G.

We see no reason to reverse and remand for more evidence on Lamb's effectiveness as defense counsel.

At this point, we note that the focus of Williams' appeal turns to his brief mention that someone else may have done something to S.G. In his brief, he offers several reasons why we should remand. First, the court should have continued the matter so he could call more witnesses. Second, the court should have granted him more time to amend his motion to claim that he was "actually innocent." Third, the court failed to make adequate findings of fact and conclusions of law. Finally, he contends the court failed in its obligation to provide substantial competent evidence that supported its findings. In our view, these arguments are a conflation of a passing remark given by Williams in his testimony. They are four arguments with no basis in reality.

8

*Williams did not claim he was actually innocent at the 60-1507 hearing.*

Williams testified at his 60-1507 hearing that S.G. told him in 2012 or 2013—about two years before he was arrested and charged in this case—that somebody else did something to her, but Williams told her that he thought she was lying. He argues now that we should remand so S.G. can testify about this.

The district court addressed this implied claim and noted Williams did not actually say he was innocent of abusing S.G. The district court also noted Williams did not raise this alleged other abuser as part of his defense at trial. The district court found there was no evidence that another party molested her. Nor was there any evidence that would lead to a finding that Williams was actually innocent.

A movant must support a claim with an evidentiary basis, which requires more than a bald assertion of actual innocence. Courts should reserve the manifest injustice exception for only rare and extraordinary cases. See *Beauclair v. State*, 308 Kan. 284, 302, 419 P.3d 1180 (2018), where the court remanded the case to the district court for an evidentiary hearing on the gateway claim of actual innocence. A claim is "'colorable' if there is 'sufficient doubt' about [a movant's] guilt 'to undermine confidence' in his conviction 'without the assurance' that the conviction 'was untainted by constitutional error.'" 308 Kan. at 303.

Williams did not even make a "bald assertion" of actual innocence. At his hearing, he testified that well before he was ever arrested for abusing S.G., she told him someone did something to her. It is not reasonable to interpret that as a colorable claim of actual innocence that warrants the application of the manifest injustice exception.

We hold that Williams' vague reference to hearing about someone else doing something to S.G.—about two years before his arrest—does not set forth an evidentiary

9

basis to support his implied claim that he was innocent of abusing S.G. Further, since the first time he raised this claim was at his 60-1507 hearing, the basis for his contention is not evident from the trial record. See *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). Williams fails to meet his burden to establish he was entitled to an evidentiary hearing on this implied claim of innocence.

There is no real substance to these claims. We need not address Williams' remaining four arguments because the district court adequately gave the issue of some unknown person who may have done something to S.G. the treatment it deserved.

Affirmed.