**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD T. POWELL,

        Petitioner - Appellant,

v.

JAMES HEIMGARTNER and DEREK
SCHMIDT,

        Respondent - Appellee.

No. 15-3241
(D.C. No. 5:12-CV-03119-SAC)
(D. Kansas)

---

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

---

Before **KELLY**, **LUCERO** and **McHUGH**, Circuit Judges.

---

    Petitioner Richard T. Powell, a Kansas prisoner appearing pro se,[1] seeks a

certificate of appealability (COA) to challenge the district court's denial of his petition

for habeas relief under 28 U.S.C. § 2254. We deny Mr. Powell's request for a COA and

dismiss the appeal.

---

    [*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule
32.1.

    [1] Because Mr. Powell appears pro se, we construe his filings liberally. *See Garza
v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).

# I. BACKGROUND

Mr. Powell was convicted of capital murder and criminal possession of a firearm based on the shooting deaths of Mark and Melvin Mims. He was sentenced to life in prison for the murder convictions and a consecutive term of twenty-three months for the firearm conviction. The Kansas Supreme Court affirmed his convictions on direct appeal. *State v. Powell* (*Powell I*), 56 P.3d 189 (Kan. 2002). Mr. Powell then sought state postconviction relief, but was denied relief in the trial court and on appeal to the Kansas Court of Appeals. *Powell v. State* (*Powell II*), 239 P.3d 114 (Kan. Ct. App. 2010) (unpublished table decision) (per curiam).

After the termination of his state-court proceedings, Mr. Powell filed the present petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. In his habeas petition, Mr. Powell presented six grounds for relief, separated into three categories: (1) trial counsel was ineffective for failing to (a) object when the trial court required him to wear a stun belt during his trial, (b) call a certain alibi witness, and (c) investigate and discover the motive of two witnesses who testified against him; (2) the trial court denied him a fair trial and violated his Sixth and Fourteenth Amendment rights by requiring him to wear a stun belt during trial; and (3) the trial court erred in failing to poll the jurors on whether they saw a newscast about Mr. Powell that aired during his criminal trial. The district court denied relief on all grounds and declined to grant a certificate of appealability (COA). Mr. Powell filed a timely notice of appeal.

## II. DISCUSSION

We liberally construe Mr. Powell's combined opening brief and application for a COA to this court as seeking a COA on three claims: (1) the district court erred in requiring him to wear a stun belt, (2) trial counsel was ineffective for failing to call his alibi witness, and (3) trial counsel was ineffective for failing to discover that two of the prosecution's witnesses had allegedly been offered favorable plea deals in their own criminal matters in exchange for their testimony against Mr. Powell.

A state prisoner must obtain a COA as a jurisdictional prerequisite to challenge a federal district court's denial of habeas corpus relief. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). A petitioner need not show his appeal will succeed to be entitled to a COA, but he must "prove something more than the absence of frivolity or the existence of mere good faith." *Miller-El*, 537 U.S. at 338 (internal quotation marks omitted).

In deciding whether a petitioner has made a substantial showing of the denial of a constitutional right, we view the merits of his claims through the deferential lens prescribed by the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA requires federal courts to uphold a state court's merits adjudication unless the petitioner

3

demonstrates the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Our analysis therefore focuses less on the petitioner's underlying claims than on the state court's disposition of those claims. Moreover, in assessing whether a state-court decision comports with Supreme Court precedent, we focus "on what a state court knew and did," and we measure the state court's decision "against [the Supreme] Court's precedents as of the time the state court renders its decision." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks omitted).

Mr. Powell first asserts the Kansas trial court erred in requiring him to wear a stun belt during his criminal trial. On direct appeal, the Kansas Supreme Court thoroughly assessed Mr. Powell's challenges to the trial court's use of the stun belt. *Powell I*, 56 P.3d at 195–201. The court explained that the decision to require such restraint mechanisms must be left in the sound discretion of the trial court, which has "direct contact with difficult situations and must have the necessary flexibility to insure that fair trials are held consistent with safety to all concerned." *Id.* at 201. The Kansas Supreme Court concluded that the trial court in Mr. Powell's case did not abuse its discretion in requiring him to wear the stun belt due to the serious nature of the charges against him and the evidence showing Mr. Powell had been involved in violent altercations with fellow inmates, had been disruptive at a severance hearing, and had refused to come out of his cell for another prior hearing. *Id.* at 195, 201. The court also concluded Mr. Powell had failed to show

4

that the jury had noticed the stun belt or that wearing it otherwise prejudiced him. *Id.* at 201.

In his application for state postconviction relief, Mr. Powell raised new, constitutional arguments regarding the use of the stun belt. *Powell II*, 239 P.3d 114, at *6–9. Specifically, he argued that use of the stun belt deprived him of a fair trial and that trial counsel was ineffective for failing to raise the constitutional claim. *Id.* The Kansas Court of Appeals concluded that even if trial counsel had raised the constitutional challenge, the result of his trial would have been the same and therefore Mr. Powell failed to show prejudice. *Id.* at *9.

In his federal habeas proceedings, Mr. Powell has failed to demonstrate that these well-reasoned state-court decisions were contrary to or involved an unreasonable application of U.S. Supreme Court precedent or were based on an unreasonable determination of the facts. The only Supreme Court case upon which Mr. Powell relies, *Riggins v. Nevada*, ruled that the administration of antipsychotic medication despite petitioner's objection was improper where the drug's interference was "particularly severe" and where the trial court failed to determine whether there was a less intrusive alternative, whether the medication was medically appropriate, and whether it was necessary to ensure the safety of petitioner and others. 504 U.S. 127, 134–36 (1992). *Riggins* is inapposite to Mr. Powell's case. Here, the evidence demonstrates the stun belt was only mildly intrusive, as there is no evidence the jury saw it or that it altered Mr. Powell's behavior in a significant way. The evidence also demonstrates that the trial court reasonably determined that use of the stun belt was necessary to ensure the safety of the

5

proceedings. Reasonable jurists therefore could not debate whether Mr. Powell was denied a fair trial or was otherwise prejudiced by the trial court's requirement that he wear a stun belt. Accordingly, we deny Mr. Powell a COA on this claim.[2]

Mr. Powell next contends trial counsel rendered ineffective assistance by failing to call Flora Jean McElroy as an alibi witness. Ms. McElroy allegedly would have testified that she was with Mr. Powell at the time the crimes were committed and that he could not have committed the murders. As part of the state postconviction proceedings, the Kansas Court of Appeals remanded to the trial court for an evidentiary hearing to develop this claim. *Powell II*, 239 P.3d 114, at *1. During the evidentiary hearing, Mr. Powell acknowledged there may have been credibility issues with Ms. McElroy's testimony. *Id.* at *9. After the conclusion of the evidentiary hearing, the trial court agreed. It ruled that trial counsel made a reasonable, tactical decision to exclude Ms. McElroy's testimony based on questions about her credibility and on counsel's belief that the trial was going well. *Id.* The Kansas Court of Appeals affirmed that decision. *Id.* at *9–10.

We evaluate a claim of ineffective assistance of counsel under the familiar two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that the deficient performance prejudiced the defense." 466 U.S. at 687. *Strickland* also instructs that our

---

[2] Because no reasonable jurist could conclude that the trial court erred in requiring Mr. Powell to wear the stun belt, no reasonable jurist could conclude that trial counsel was ineffective for failing to object to the use of the stun belt. Thus, a COA would also be inappropriate for any ineffectiveness claim based on the failure to object to the stun belt.

6

"scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In determining whether to grant a COA on an ineffective-assistance claim, we add a second layer of deference to determine whether reasonable jurists could debate whether counsel's performance was deficient and whether the deficiency was prejudicial. Our review is thus "doubly deferential." *Pinholster*, 563 U.S. at 190.

We find no basis to conclude that reasonable jurists could debate the state court's denial of relief on this ineffective-assistance-of-counsel claim. Instead, based on the evidence demonstrating Ms. Elroy's credibility issues, reasonable jurists could not conclude that trial counsel's tactical decision to exclude her testimony was irrational. We therefore deny Mr. Powell's request for a COA on this claim.

Finally, Mr. Powell asserts trial counsel was ineffective for failing to discover that two of the prosecution's witnesses allegedly received favorable plea deals in their own criminal proceedings for testifying against him. Specifically, Mr. Powell contends Mylon Williams and Kenton "Reece" Williams received leniency in exchange for their testimony against him. This claim was also developed in the evidentiary hearing on remand during Mr. Powell's state postconviction proceedings. *See Powell II*, 239 P.3d 114 at *10. At the hearing, Mr. Powell testified as to his belief that Mylon and Reece each received leniency in exchange for their testimony. But on cross-examination, the state demonstrated Reece had pled no contest in a criminal prosecution regarding drug possession, that his plea agreement in that case included no provision requiring him to testify against Mr. Powell, and that a burglary charge against Reece had been resolved and Reece began serving his sentence before the murders in this case were committed. *Id.*

7

As to Mylon, who is Mr. Powell's nephew, *id.* at *1, the state established through its cross-examination of Mr. Powell that Mylon's criminal charge and sentencing had been completed, in part, before Mr. Powell's crimes, *id.* at *5. And the State asserted during state postconviction proceedings that it made no leniency agreements with either Mylon or Reece in exchange for their testimony against Mr. Powell. *Id.* at *10. Based on this evidence and the lack of evidence supporting Mr. Powell's claim, the Kansas Court of Appeals ruled that Mr. Powell failed to prove trial counsel was ineffective for failing to discover "deals that did not exist." *Id.*

During his federal habeas proceedings in the district court, Mr. Powell submitted new evidence to support this claim: an affidavit from Mylon recanting his testimony against Mr. Powell and stating the prosecution had threatened that if he did not testify against Mr. Powell he would receive "the max on [his] drug case." In his combined brief and application for a COA to this court, Mr. Powell relies heavily on Mylon's affidavit in support of his ineffective-assistance claim. But because the Kansas state courts addressed this claim on its merits, our review under § 2254 "is limited to the record that was before the state court." *Pinholster*, 563 U.S. at 181. Therefore, we may not consider the evidence contained in Mylon's affidavit. But even if the affidavit were properly before us, recanted testimony "is notoriously unreliable." *Case v. Hatch*, 731 F.3d 1015, 1044 (10th Cir. 2013). Indeed, such testimony is "easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." *Id.* (internal quotation marks omitted). Thus, with or without Mylon's affidavit, Mr. Powell has not shown that reasonable jurists could debate

8

whether trial counsel was ineffective for failing to discover evidence of Mylon's and Reece's deals for testifying against him where he has produced no reliable evidence that such deals exist.

Because we conclude no reasonable jurist would find the denial of Mr. Powell's habeas petition debatable, we deny a COA on all claims and dismiss the matter.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge