NOT DESIGNATED FOR PUBLICATION

No. 120,679

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICHARD T. POWELL,
*Appellant,*

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER ORTH MYERS, judge. Opinion filed December 23, 2020. Affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, for appellant.

*Christopher L. Schneider*, assistant district attorney, *Mark A. Dupree Sr.,* district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and SCHROEDER, JJ.

PER CURIAM: Richard Powell appeals the dismissal of his K.S.A. 60-1507 motion, contending his attorney at the hearing of his motion provided ineffective assistance of counsel because she presented no evidence. He also claims that the court erred by denying his motion for new counsel. After our careful review of the record, we affirm the court's dismissal.

1

Powell was convicted of the murders of Mark and Melvin Mims in 1999 and sentenced to life in prison. Based on an affidavit from one witness who testified at trial, Powell, in 2016, filed a successive, out-of-time 60-1507 motion. In the affidavit that Powell relies on, Kenton Williams purports to recant his trial testimony. At the evidentiary hearing on this motion, Powell's attorney told the court that she would not be calling Kenton to testify. After speaking with him, she did not believe he would help Powell's defense. At this point, Powell asked for a new attorney. The court refused. Without taking any testimony from Kenton, the court denied Powell's 60-1507 motion.

Powell makes two arguments in this appeal. He first contends that his 60-1507 counsel was ineffective because she presented no evidence for him in support of his motion at the hearing. Powell also contends the court erred when it refused to appoint him a new attorney. We will address the issues in that order.

*The case history provides a context for our opinion.*

Some of the facts of the crime are useful in understanding the significance of the affidavit that Powell presented to the 60-1507 court. The Kansas Supreme Court affirmed Powell's convictions on direct appeal in *State v. Powell*, 274 Kan. 618, 56 P.3d 189 (2002). More details of his crime can be found in that opinion.

On February 6, 1998, Mark and Melvin Mims were found dead in a car from gunshot wounds.

Kenton Williams—the man who later signed the affidavit recanting his testimony—and Marcus Henderson testified at trial that they were riding around in a car doing drugs the previous night with Powell and the Mims brothers. Kenton and Henderson both testified Melvin was angry at Powell and that Powell was carrying a gun.

But Kenton and Henderson went home before the killings and did not know what happened after they left. Henderson testified he left Powell alone with the Mims brothers.

Other witnesses saw those men together that night. Donte Jones also testified he had seen Powell with a gun before the killings that night.

Brandy McCullough, Mylon Williams, and Jones testified that late on the night of February 5, 1998, or very early the next morning, Powell told them he had killed the Mims brothers. Mylon was Powell's nephew and lived with his girlfriend, McCullough. Mylon and McCullough testified that right after they heard gunshots Powell came into their house holding a gun. Mylon testified Powell was waving the gun around, ranting and raving, calling himself a serial killer, and claiming to have shot the Mims brothers.

McCullough described Powell as "all hyped up" and testified Powell had said, "I just smoked them. I just smoked them niggas." Jones testified that Powell told him to watch the news; that two brothers would be found dead in a car on 6th street. Jones testified Powell said he shot them because they were disrespecting him.

A jury convicted Powell of capital murder of the Mims brothers and criminal possession of a firearm. The death penalty was not considered because of Powell's mental condition. He received a life sentence in prison with no possibility of parole for 25 years for the murders and 23 months for the firearm charge.

In 2003, Powell filed a 60-1507 motion, which was denied. The denial was ultimately affirmed by this court in *Powell v. State*, No. 100,803, 2010 WL 3853069 (Kan. App. 2010) (unpublished opinion). Among other things, Powell had argued ineffective assistance of counsel concerning counsel's failure to find out whether Kenton or Mylon were given leniency for their testimony. Powell alleged Kenton later told him he got a deal. But this court noted:

3

"On cross-examination, Powell admitted that he was not aware that part of the criminal charges and sentencing of both [Kenton] and Mylon had been completed before his crimes even occurred. Powell admitted he did not subpoena either witness even though Mylon was his nephew and [Kenton] was currently in jail facing his own capital murder charges." 2010 WL 3853069, at *5.

This court found that the record supported the State's assertion that there were no agreements for leniency in exchange for testimony and Powell failed to show ineffective assistance of counsel in Mylon's and Kenton's cross-examination at trial. 2010 WL 3853069, at *10-11.

In 2012, Powell filed a federal habeas petition in the United States District Court for the District of Kansas, again asserting that Kenton had received leniency in exchange for his testimony. That court denied his petition, and the 10th Circuit Court of Appeals dismissed his appeal. *Powell v. Heimgartner*, 640 Fed. Appx. 705, 710 (10th Cir. 2016) (unpublished opinion); *Powell v. Heimgartner*, No. 12-3119-SAC, 2015 WL 5439028, at *5 (D. Kan. 2015) (unpublished opinion). Powell had tried to stay the federal matter to return to state court to present an affidavit from Kenton recanting his testimony. The federal courts denied the stay and ruled the affidavit was not properly before them. Both courts questioned the reliability of the affidavit, noting that recanted testimony is "'notoriously unreliable'" and viewed "with suspicion." 640 Fed. Appx. at 710; 2015 WL 5439028, at *1.

In 2016, Powell filed a second 60-1507 motion which is the subject of this appeal. He alleged newly discovered evidence in the form of the affidavit from Kenton recanting his testimony. Powell alleged he should be permitted a successive out-of-time 60-1507 motion because of the exceptional circumstance of newly discovered evidence and resulting manifest injustice. He claimed he was innocent of the crime. He sought an evidentiary hearing so the district court could make a credibility determination of the

recanted testimony. He asserted the recanted testimony was of such materiality that a jury would have reached a different verdict if presented at trial.

In the affidavit, Kenton stated that his testimony—that Powell was in the car, Powell had a gun, and Melvin Mims was mad at Powell—was a lie. Kenton stated that the Mims family thought he had something to do with the murders, so he made up a story based on what Henderson told him. Kenton stated that he told District Attorney Jerome Gorman that he had lied to the detective, but Gorman told him he "had to go to court and [if] I didn't he would give me the max on my drug case." Kenton stated he was coming forward because it was the right thing to do and he needed to clear his conscience to move on with his life.

Powell's motion was set for an evidentiary hearing. Powell's attorney, Debra Erickson, had tried to have an expert testify that Powell's case was not handled like a death penalty case should have been handled—with two attorneys and an investigator. But the court stopped Powell from arguing anything besides the newly discovered evidence because he had alleged ineffective assistance of counsel in his prior 60-1507 motion and could have raised other issues then.

Attorney Erickson then stated that she would not be calling Kenton to testify because after having an hour-long conversation with him she did not believe his testimony would help Powell "in any way." She also stated she could not make arguments based on what was in the affidavit because of her ethical obligations. Powell asked for a new attorney, which the court denied. The court found that any attorney would have the same ethical concerns.

Powell argued on his own behalf. He suggested that Kenton should be brought to testify, noting that he would be the one to bear the consequences of whatever Kenton said. Powell argued that the prosecutor had given Kenton leniency to testify at trial.

Powell stated that he did not ask Kenton to make the affidavit and, given that Kenton keeps changing his story, the only way to get to the truth was to get Kenton on the stand and have him cross-examined. Powell stated that he was doing time for a crime he did not commit.

The State offered evidence that showed Powell and Kenton had been housed at the same correctional facilities for a time in 2016 and 2017. Erickson responded that Powell advised her that even though they were in the same prison at certain times, they were not in the same area.

The court ruled without taking Kenton's testimony. It found that whether Kenton was granted leniency to testify for the State was resolved in Powell's first 60-1507 motion. The court noted that based on Erickson's statements at this hearing, it had to assume that if brought to testify, Kenton would not testify in a manner consistent with his affidavit. The court also found that even if Kenton did testify consistent with his affidavit, it would not change the outcome of the trial because Kenton had limited information on Powell's guilt, and several other witnesses testified at trial that they saw Powell with a gun.

And the court found that there would be questions about Kenton's credibility. Using the *Vontress* factors because the motion was brought out-of-time, the court ruled that Powell had provided a persuasive reason that he could not have filed this motion within the one-year time limitation because the affidavit was not made until 2014. See *Vontress v. State*, 299 Kan. 607, Syl. ¶ 8, 325 P.3d 1114 (2014). But the court then ruled that Powell did not make a colorable claim of actual innocence because Kenton was not the only witness who testified about Powell's guilt. The court dismissed Powell's motion.

It is often helpful to determine what is and is not being argued. We note that Powell is not arguing that the district court erred by precluding him from raising anything

6

but the newly discovered evidence at the evidentiary hearing. And Powell is not arguing that the district court erred in refusing to bring Kenton to the court to testify after Powell personally addressed the court and made such a request. Instead, Powell is arguing:

- Erickson provided ineffective assistance of counsel at the 60-1507 hearing; and
- the court erred by refusing to allow Erickson to withdraw and appoint new counsel. He asks that the case be remanded for a new evidentiary hearing with conflict-free counsel.

*Erickson did not provide ineffective assistance at the motion hearing.*

Powell argues that Erickson provided ineffective assistance of counsel at the evidentiary hearing when she chose not to present any evidence. He contends that Erickson failed to investigate and she should have called Kenton to testify at the hearing. He also argues that it was not Erickson's job to determine whether Kenton was being truthful; that it was for the judge to decide. He cites *State v. Smith*, 291 Kan. 751, 756, 247 P.3d 676 (2011). He contends Kenton's testimony should have been presented together with a proffer concerning the unreliability of the trial evidence, his trial attorney has since been disbarred, and the lead detective on his case has since been named in a civil suit among several other officers accused of misconduct that led to the reversal of another defendant's conviction.

Powell makes a new ineffective assistance of counsel argument that was not made before the district court. He contends the ineffectiveness of Erickson's representation was "obvious" from the record and can be heard by this court for the first time on appeal.

Appellate courts generally will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019). The factual aspects of a claim of ineffective assistance of counsel generally require that the matter be resolved through a 60-1507 motion or through a request for

remand to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986).

We may consider a claim of ineffective assistance of counsel for the first time on appeal only when there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a matter of law based upon the appellate record. *Salary*, 309 Kan. at 483. When the quality of representation provided by a movant's 60-1507 counsel is determinable on the transcript of a nonevidentiary hearing included in the record on appeal, this court can address the issue without remand to the district court. *Robertson v. State*, 288 Kan. 217, 228, 201 P.3d 691 (2009).

Generally, to prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish:

- That the performance of defense counsel was deficient under the circumstances; and
- prejudice:  that there is a reasonable probability the jury would have reached a different result without the deficient performance.

*Salary*, 309 Kan. at 483 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674(1984).

There is an exception to the general *Strickland* rule known as the *Cronic* exception. The *Cronic* exception applies only when a defendant is denied the assistance of counsel or denied counsel at a critical stage of a proceeding. Under these circumstances, a court may presume the defendant was prejudiced. *Fuller v. State*, 303 Kan. 478, 486-87, 363 P.3d 373 (2015) (relying on *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 [1984]). *Cronic* applies in rare circumstances:

"This narrow exception, referred to as the *Cronic* exception, is 'reserved for situations in which counsel has entirely failed to function as the client's advocate.' The Supreme Court

8

has stressed this last point, emphasizing 'the attorney's failure must be complete,' that is, the *Cronic*-type presumption applies only "'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'" [Citations omitted.]" *Edgar v. State*, 294 Kan. 828, 840, 283 P.3d 152 (2012).

Powell contends that the *Cronic* ruling rather than the *Strickland* test applies here because Erickson completely abandoned Powell by failing to present any evidence on his behalf. By not offering evidence and failing to argue the *Vontress* factors, she, in fact, weakened his case. Thus, he contends he need not show prejudice.

But he contends he can also meet the *Strickland* test anyway, because Erickson, in choosing to present no evidence, was objectively unreasonable and he can show prejudice because "the confluence of failures and misconduct in this case make the end result very fishy. And further investigation . . . may have revealed more."

*We hold the Cronic exception does not apply here.*

Several cases offer us guidance in making this determination. The first is *Robertson*, 288 Kan. at 220. Robertson's appointed 60-1507 counsel stated he did not agree with the jury's verdict but told the court that many of Robertson's claims were trial errors that should have been raised on direct appeal. Counsel admitted he had not read the court's decision resolving Robertson's direct appeal. As for Robertson's claims that his trial counsel was ineffective, the 60-1507 counsel told the court that trial counsel's representation was "exceptional" and Robertson's claims lacked merit. 288 Kan. at 221. Counsel made no argument in favor of Robertson's 60-1507 motion. The court noted that within the limits of the lawyer's duty to be candid to the court and to obey our ethics rules, a lawyer's loyalty is to the client:

"Once appointed, counsel for a K.S.A. 60-1507 motion must, within the stricture of required candor to the court and other ethical rules, pursue relief for the client. If this

9

requires counsel to stand silent or merely to submit the case on the written arguments of that client, so be it. Counsel is simply not free to act merely as an objective assistant to the court or to argue against his or her client's position. That is, unfortunately, what counsel for Robertson did here." 288 Kan. at 229.

But after saying that, the *Robertson* court turned to the question of prejudice. The court clarified that the standard of prejudice to be applied when counsel is appointed under K.S.A. 60-1507 is the same standard applied when counsel is constitutionally required. The court found that Robertson had not shown prejudice because the motion, files, and records established that he was not entitled to K.S.A. 60-1507 relief. The court noted that there were no substantial legal issues or triable issues of fact when counsel was appointed to represent Robertson. The district court could have refused to appoint counsel initially and summarily denied the motion. 288 Kan. at 232. After that came the ruling in *Alford v. State*, 42 Kan. App. 2d 392, 404, 212 P.3d 250 (2009).

In *Alford,* this court noted that the prejudice standard applied in *Robertson*-controlled cases involving an allegation that appointed counsel was ineffective in representing a 60-1507 movant. 42 Kan. App. 2d at 399. Alford's appointed 60-1507 counsel acted as an objective assistance to the trial court, argued against Alford's position on some claims, and did nothing to represent Alford's interest. Therefore, his representation was deficient. 42 Kan. App. 2d at 398-99. But like in *Robertson*, there existed no substantial legal issues or triable issues of fact when counsel was appointed to represent Alford. Alford failed to demonstrate prejudice and was therefore not entitled to any relief. 42 Kan. App. 2d at 400-01, 404. From these rulings, we are convinced that a 60-1507 movant must show prejudice to obtain relief. We now move into the *Cronic* exception.

In *Lingenfelter v. State*, No. 102,391, 2010 WL 4320356, at *2 (Kan. App. 2010) (unpublished opinion), in response to questioning by the court, Lingenfelter's 60-1507

10

counsel advised the court that Lingenfelter had only provided general rather specific information concerning his claims. On appeal, Lingenfelter argued that prejudice should be presumed under *Cronic*. But, citing *Robertson*, the panel held that a showing of prejudice was required when the performance of statutorily provided counsel on a 60-1507 motion was questioned. 2010 WL 4320356, at *5.

In *State v. Adams*, No. 109,673, 2014 WL 2402185, at *1 (Kan. App. 2014) (unpublished opinion), during a hearing on Adams' motion to correct illegal sentence, the court asked Adams' appointed counsel outright whether counsel believed Adams' sentence was illegal. Counsel said he did not believe so, but the court should review the authorities and make an independent ruling. On appeal, Adams argued his counsel completely abandoned his role as advocate and that *Cronic* applied. The panel noted that at first when asked whether Adams' sentence was illegal, counsel properly stated, "'My client indicates that he feels the sentence is illegal.'" 2014 WL 2402185, at *1. It was only after the court placed counsel in an untenable position by asking counsel whether, as an officer of the court, he believed the sentence was illegal that counsel responded that he did not believe so. Under such circumstance, the panel held that Adams' counsel did not entirely fail to represent Adams and, therefore, *Cronic* did not control. 2014 WL 2402185, at *3.

But another panel of this court has identified a situation in which the *Cronic* exception did apply to a 60-1507 counsel's representation. In *State v. Samuels*, No. 116,758, 2017 WL 5184425, at *3 (Kan. App. 2017) (unpublished opinion), Samuels' appointed 60-1507 counsel revealed to the court that he had not spoken to Samuels or Samuels' trial counsel, had not read the transcripts of Samuels' plea or sentencing hearings, stated he did not know if he could answer whether Samuels met his burden to show excusable neglect, and knew that Samuels had mental health issues but did not investigate whether such issues would justify setting aside the time limitations on the filing of his motion. Counsel admitted he could not answer whether Samuels' mental

11

health impaired his judgment at the time of his plea, whether Samuels' trial counsel misled him about his right to file a motion to withdraw his plea, or what effect his claim of actual innocence would have on the question of excusable neglect. Yet counsel said it was hard to imagine Samuels could show excusable neglect. Counsel stated he had "no doubt" the district court had done all that was required. The panel likened the situation to *Robertson*, but held that prejudice could be presumed because appointed counsel did not function as an advocate for Samuels; counsel advocated against Samuels. 2017 WL 5184425, at *3-4.

We cannot use a broad brush when we make this decision. When a defendant asks for new counsel, the existing counsel must "walk a delicate line" between recounting the basis of the alleged conflict of interest and advocating against his or her client's position. *State v. Pfannenstiel*, 302 Kan. 747, 766, 357 P.3d 877 (2015). In *Pfannenstiel*, upon inquiry into an alleged conflict of interest, counsel suggested she felt the witnesses Pfannenstiel wanted to call would not be helpful and might undermine his testimony. On appeal, the court held that comment merely recounted counsel's strategic decision—a generally appropriate area of inquiry when a conflict of interest is claimed. 302 Kan. at 767.

After considering all of these cases, we hold that the *Cronic* exception does not apply here. Erickson said she was not going to call Kenton to testify because she did not believe he would provide helpful testimony. *Robertson* instructs that counsel should remain silent rather than argue against the client's position. But because Powell had asked for new counsel, Erickson could not just stand silent. It would have been error if no inquiry had been made into the alleged conflict between Powell and Erickson to determine whether new counsel should be appointed.

Erickson had to "walk a delicate line" between recounting the basis of the alleged conflict of interest and advocating against Powell's position. See *Pfannenstiel*, 302 Kan.

12

at 766. Here, Erickson made essentially the same comment as counsel in *Pfannenstiel*. She merely recounted her strategic decision not to call Kenton to testify. She did not get into the details of what Kenton had told her.

It is important to note that Erickson also told the court that she could not ethically advance arguments based on what was in Kenton's affidavit. But when arguing a motion for new counsel, an attorney may advise the court that his or her client wanted false evidence introduced. See *Smith*, 291 Kan. at 756. From these circumstances, we infer that Erickson would not advance arguments based on Kenton's affidavit because she believed the affidavit to be false.

This case is not like *Samuels* where counsel was completely unprepared yet argued against his client's position. In preparing for the hearing, Erickson interviewed Kenton, read the trial transcripts, discussed the case with Powell, and was prepared to hire an expert to show that Powell's case was not handled correctly, but she was precluded from doing so by the court. She did not argue that Powell's motion had no merit, as the attorney in *Robertson* did. After the State presented evidence that Powell and Kenton were housed at the same prisons, Erickson advanced Powell's argument that he and Kenton were not in the same area of the prison. Erickson also made a record of the court's ruling that she was precluded from arguing anything but Kenton's recantation. Erickson did not completely abandon Powell. Thus, Powell must show a deficiency of representation and prejudice to obtain relief.

*We must follow certain rules at this point.*

When analyzing a claim of ineffective assistance of counsel, judicial scrutiny of counsel's performance is highly deferential. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). It is within the province of a

lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions. But when counsel lacks the information to make an informed decision due to inadequacies of his or her investigation, any argument of strategy is inappropriate. *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 (2011).

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013). But the failure to complete a thorough investigation is a ground for establishing ineffective assistance of counsel. *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014). And "the strategy itself must still pass muster." *Bledsoe v. State*, 283 Kan. 81, 94, 150 P.3d 868 (2007). If no competent attorney would have adopted the strategy, it falls below minimum constitutional standards. *Wilson*, 51 Kan. App. 2d at 15.

*We are unconvinced that counsel's performance was deficient.*

Based on this record, we are not persuaded that Erickson failed to investigate, as Powell contends on appeal. Powell's assertion is not supported by the record. Erickson interviewed Kenton and she was prepared to hire an expert to testify that Powell's trial was not handled as a capital murder trial should be conducted.

Powell's assertion that a more thorough investigation would have revealed misconduct by the lead detective, prosecutor, or trial counsel is too speculative. We are not saying that further investigation would not reveal deficiencies and misconduct, as seen in the Lamonte McIntyre case (a defendant whose conviction was reversed due to police officers' misconduct). But it is not apparent from this record. According to a newspaper article that is in the record, McIntyre presented more than 40 affidavits supporting his innocence. Specifically, there was a 17-page affidavit from a former police

14

captain in the department that conducted the investigation—he gave an alternative theory of who committed the murders.

This record is very different. Powell's argument assumes there was something to find without showing us what it is. Without showing us that a more thorough investigation would have uncovered new evidence of Powell's innocence, Powell argues that Erickson was ineffective. He argues that she failed to investigate, yet we have no testimony from her about the extent of her investigation. We cannot grant relief based upon speculation.

Our misgivings about a lack of a record supporting an argument like this have been illustrated in a prior case. In *Mundy v. State*, 307 Kan. 280, 296-97, 408 P.3d 965 (2018), on a claim raised for the first time on appeal that Mundy's 60-1507 counsel was ineffective, the court held it could not determine from the record that her 60-1507 counsel was ineffective, but it also could not determine Mundy's claim was without merit. Mundy did not request a remand, so the court declined to reach the issue. 307 Kan. at 299. That record was much sparser than what is before this court. See 307 Kan. at 296. But here, on Powell's claim that Erickson failed to investigate, this record does not show that Erickson was ineffective.

In his brief, Powell points to inconsistencies:
- In the trial witnesses' testimony;
- the time line given by the disinterested witnesses did not match the time line given by the other witnesses;
- McCullough had a motivation to lie;
- deficiencies in the crime scene investigation; and
- the lead detective did not testify.

15

All of these deficiencies were pointed out by his trial attorney at trial and thus considered by the jury that convicted Powell. Erickson was not ineffective for failing to argue these issues at the 60-1507 hearing.

We cannot rule that Erickson was ineffective because she did not call Kenton to testify. There is no record of what Kenton planned to say. Powell does not ask for a remand to determine this question. This court can only speculate. As stated above, this court is highly deferential to an attorney's strategic decision unless no competent attorney would adopt the strategy. *Wilson*, 51 Kan. App. 2d at 15.

These circumstances differ from those in *Smith.* In *Smith*, Smith was charged with robbery. Smith's attorney, James Rumsey, viewed a surveillance video of the robbery and determined that Smith was guilty. Before trial, the attorney told the court, "'There is no doubt that it is the face of the defendant.'" 291 Kan. at 753. The attorney then refused to put on evidence that would tend to suggest Smith was physically infirm and unable to perform the robbery. At Smith's request, Rumsey moved to withdraw as Smith's counsel. The court denied the motion.

The Supreme Court held that counsel could have presented truthful evidence even though that evidence might create an inference that Smith was not guilty because Rumsey's duty as defense counsel was to advocate for his client. It was the jury's duty to view all of the evidence and determine whether Smith was guilty. "[I]f [counsel's] refusal to introduce evidence on Smith's behalf was based upon Rumsey's out-of-bounds determination of guilt, rather than on the falsity of the evidence, Smith's dissatisfaction was justified." 291 Kan. at 756-57.

But here, unlike *Smith,* Powell argues Erickson had to present Kenton's truthful testimony even if that testimony would not have been beneficial to Powell in any way. This differs from *Smith*, where the facts that Smith wanted his attorney to introduce

16

evidence that he had a physical infirmity would have helped his defense. The *Smith* court stated: "[Counsel's]duty as defense counsel was to advocate for his client including the presentation of any truthful, relevant evidence *that would assist in his client's defense*." (Emphasis added.) 291 Kan. at 757. Here, Erickson did not believe that Kenton's testimony would assist her client's defense.

And unlike *Smith*, Erickson made no comment that she believed Powell was guilty. In fact, she had tried to argue that Powell's case was not handled like a capital case should be handled. It was within Erickson's role as counsel for Powell to make the decision whether to call a witness to testify. A defense attorney does not provide ineffective assistance of counsel by failing to call a witness that will not provide beneficial testimony to his or her client. Powell essentially argues that the calculus here was different from a trial attorney determining which witnesses to call for trial because he was already convicted of the crime and therefore he had nothing to lose. But even if that were true and Erickson's representation was found deficient in that regard, Powell could not meet the prejudice prong of the ineffective assistance of counsel test with a "nothing to lose" calculus.

We also comment on the ethical considerations at play here. Erickson's refusal to make arguments based on Kenton's affidavit is controlled by Kansas Rule of Professional Responsibility (KRPC) 3.3(a)(3) (2020 Kan. S. Ct. R. 353). "A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false." Erickson presumably believed the affidavit was false based on her hour-long conversation with Kenton. Thus, she did not provide ineffective assistance by following KRPC 3.3(a).

*Powell has not shown us prejudice.*

The district court held that even if Kenton did testify to everything stated in his affidavit, it would not be enough for a new trial. Kenton's trial testimony was duplicative of other witnesses' testimony and was not that important to the question of Powell's guilt for the murders. Kenton was not the last one to see Powell with the Mims brothers the night of the murders—that was Henderson. Kenton testified that he did not know what happened after he left that night. Three other witnesses testified that they saw Powell shortly after the murders, Powell had a gun, and Powell confessed to the murders.

In response to this, Powell argues on appeal that his case is "very fishy. And further investigation . . . may have revealed more." That is not a showing of prejudice. Powell is not entitled to relief on this point. We move on to the question of appointing new counsel.

*The district court did not have to appoint new counsel for Powell.*

Powell contends that the district court abused its discretion by denying his motion for new counsel. Citing *Smith* as support, Powell argues that because Erickson refused to present Kenton's testimony, he was justifiably dissatisfied with Erickson's representation.

The rule on this is well established. A defendant who files a motion for new counsel must show "justifiable dissatisfaction" with appointed counsel, which can be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. *Pfannenstiel*, 302 Kan. at 759-60. We review the district court's decision whether to substitute counsel for an abuse of discretion. 302 Kan. at 762.

A defendant's dissatisfaction that defense counsel refuses to call a witness that would not be beneficial to or advance the defendant's defense is not "justifiable dissatisfaction" that entitles the defendant to new counsel. It is not an irreconcilable conflict that can be remedied by the appointment of new counsel. Rather, it is really the defendant's dissatisfaction that counsel could not produce evidence that would exonerate the defendant. *State v. Burnett*, 300 Kan. 419, 450-51, 329 P.3d 1169 (2014). Further, if the dissatisfaction is an attorney's refusal to present false evidence, the district court does not abuse its discretion by denying the motion for new counsel. In such cases, the defendant's dissatisfaction is not justifiable because any later appointed attorney would be bound by the same ethical constraints. *Smith*, 291 Kan. at 755.

Erickson refused to call a witness that would not be beneficial to Powell and refused to present what she believed was false evidence. This is not a case in which defense counsel refused to present truthful evidence that would have tended to show her client was innocent because she believed her client was guilty, like in *Smith*. Here, there is no indication a different attorney would have done anything different. This was not a justifiable dissatisfaction that could be remedied with new counsel. The district court did not abuse its discretion in denying Powell's motion for new counsel.

Powell is not entitled to relief on this point.

Affirmed.